**In re Lisa BARRIGER, Debtor in Chapter 7.**

**NATIONAL BANK OF COMMERCE, Plaintiff,**

**v.**

**Lisa BARRIGER, Defendant.**

**Bankruptcy No. 86–20047. Adv. No. 86–0086.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

May 30, 1986.

Michael P. Coury, Memphis, Tenn., for plaintiff.

Robert E. Rose, Memphis, Tenn., for debtor.

## MEMORANDUM OPINION AND ORDER

WILLIAM B. LEFFLER, Bankruptcy Judge.

This cause came on to be heard on May 20, 1986 upon the Plaintiff's complaint seeking to determine the dischargeability of the Debtor's debt, or, in the alternative, to require her compliance with her original "statement of intentions" as to this debt. At issue is whether this debt should be excepted from discharge pursuant to 11 U.S.C. § 727(a)(2) and § 523(a)(6), and whether the Debtor should be required to comply with her original intention as filed in accordance with 11 U.S.C. § 521(2)(A). The § 521(2)(A) question is one of first impression in this district.

Ms. Barriger filed a Chapter 7 Petition with this Court on January 6, 1986. At that time, the Plaintiff was a secured creditor in the amount of $6,003.24. Its position is evidenced by a note and security agreement executed by the parties on June 5, 1985 and securing a 1981 Pontiac Grand Prix. Accompanying the Debtor's petition was a "statement of intentions" (Tr.Ex.1) which reflected that the Debtor intended to "retain" the automobile and "reaffirm" her debt to the Plaintiff. The Debtor signed this statement of intentions. At the hearing, she testified that she had signed the statement in her attorney's office on December 19, 1985 when she was contemplating the Chapter 7 filing but was unable to pay the filing fee. She further testified that she decided on December 31, 1985 when the insurance on the Grand Prix expired, that she could no longer afford the automobile and would not reaffirm the debt. Moreover, she claimed to have been told by her attorney that she could announce that decision to creditors at her first meeting of creditors.

The Chapter 7 Petition along with the statement of intentions was thus filed on January 6, 1986 and the meeting of creditors scheduled for February 10, 1986. Meanwhile, the Debtor's attorney received a letter from the Plaintiff dated January 27, 1986 (Tr.Ex.3) in which the Plaintiff inquired as to the Debtor's intentions regarding the Grand Prix. There was no proof as to when the letter was sent or received and the Debtor announced her intention not to reaffirm the debt at the February 10th meeting of creditors although the Plaintiff was not present.

The Debtor testified at the hearing that she had not driven the automobile subsequent to the insurance expiration and had "stored it" in the parking lot of the apartment complex where her parents live. On February 15, 1986 she was moving it to her sister's home, which is a house with a private driveway, for storage when it was wrecked. The Plaintiff was informed of such on February 17, 1986 and repossessed the automobile. According to the Plaintiff's witness, Mr. F.N. Nobles, the balance due at the time of repossession was $5,014.11; the automobile was subsequently sold for $1,757.53 leaving a present balance of $3,256.58. It is this amount that the Debtor seeks to discharge.

As indicated above, the Plaintiff seeks to have the Debtor's discharge denied, alleging that she, "with intent to hinder or delay" the Plaintiff, "mutilated" property of the estate after the petition was filed pursuant to 11 U.S.C. § 727(a)(2). Moreover, the Plaintiff charges that the Debtor "willfully and maliciously" injured property of the Plaintiff within the meaning of 11 U.S.C. § 523(a)(6). Finally, the Plaintiff seeks to have the Court require the Debtor to reaffirm this debt pursuant to 11 U.S.C. § 521(2)(B) and her "statement of intentions."

■ Turning first to the section 727(a)(2) issue, it is well settled that the Plaintiff has the burden of proving the objection and that objections are to be construed liberally in favor of the Debtor. See e.g., *In re Epperson* 45 B.R. 708, 710 (Bankr.E.D. Tenn.1985), *In re Cycle Accounting Services*, 43 B.R. 264, 270 (Bankr.E.D.Tenn. 1984), *In re Church* 47 B.R. 186, 189 (Bankr.E.D.Tenn.1985). The record in the case at bar does not reflect that this Debtor intended to hinder or delay the Plaintiff. To the contrary, she testified that she acted upon the advice of counsel in announcing her changed intention toward reaffirming this debt and declined to drive the automobile following the insurance expiration.

■ With respect to the section 523(a)(6) issue, there is no evidence before the Court that the injury to the automobile was anything but accidental, therefore, it is presumed that this objection is based upon the Debtor's failure to maintain insurance. Prior decisions in this district interpret the "willful and malicious injury" requirement of 11 U.S.C. § 523(a)(6) to consist of an intentional or deliberate act by the debtor constituting "something more than reckless disregard" for the property of others. Moreover, the failure to maintain insurance on collateral while amounting to a "breach of contract and negligence" on the part of the Debtor, has not been held to constitute "willful and malicious injury." *In re Bafford*, 61 B.R. 631 (W.D.Tenn.1985), see also *In re Maiolo*, 12 B.R. 114 (Bankr.N.D.

Ga.1981). In the instant proceeding, as in the *Bafford* case, the Debtor testified that she allowed the insurance to lapse because she could not afford the premiums. In addition, she claimed to have stopped driving the automobile once it became uninsured except to move it to safer storage. From these facts, the Court cannot find that she willfully and maliciously caused injury to the automobile within the meaning of 11 U.S.C. § 523(a)(6).

Finally, the Court must consider whether the Debtor should in essence be denied a discharge of this debt by requiring compliance with her statement of intentions. Section 521 of the Bankruptcy Code provides in pertinent part:

The debtor shall—....

(2) if an individual debtor's schedules of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under Chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such period as the Court, for cause, within such period fixes, the debtor shall file with the Clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, ... the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;....

The following discussion taken from *In re Eagle* 51 B.R. 959, 961 (Bankr.N.D.Ohio 1985) provides some insight as to the interpretation of this section.

The new section [521(2)] is one of the consumer credit amendments which were intended to curb some of the perceived abuses of the Code and at the same time encourage a fully informed debtor. 130 Cong.Rec. H1810 (daily ed. March 21, 1984) (statement of Rep. Synar). Moreover, legislative history on the consumer credit amendments is woefully inadequate as H.R. 5174 was passed through the House of Representatives in two days. Id at H1809 (statement of Rep. Hyde), and at H1888 (statement not floor remark by Rep. Gingrich). The section as enacted is a subdued version of an earlier proposed one which would have required the debtor to directly serve notice of his intention to redeem the secured property upon the creditor and to perform such intention at or before the conclusion of the section 341 meeting of creditors. S. 1208, 97th Cong., 2d Sess., 129 Cong.Rec. S5342–43 (daily ed. Apr. 27, 1983). In addition, the debtor's failure to meet such obligations would have resulted in an automatic termination of the section 362(a) stay releasing the creditor to enforce its lien. Id. What was finally enacted differed significantly.

Recurrent throughout the legislative remarks regarding the consumer credit amendments of H.R. 1800 which were incorporated within H.R. 5174 is the theme of debt repayment. 130 Cong. Rec. H7491 (daily ed. June 29, 1984). The notice provisions, whereby the debtor is made aware of the Chapter 13 alternative to straight liquidation, and the simplification of the debt reaffirmation procedure support this legislative goal of "encourag[ing] debtors and creditors to make mutually satisfactory arrangements to repay debts outside of bankruptcy." 130 Cong.Rec. S8894 (daily ed. June 29, 1984) (statement of Sen. Hatch). Also recurrent are the notice provisions whereby the "debtors are [made] aware of their rights and obligations under all chapters of the Bankruptcy Code." 130 Cong.Rec. H1810 (daily ed. Mar. 21, 1984) (statement of Rep. Synar). However, most illuminative of legislative intent be-

hind section 521(2) is the following colloquy between Congressmen Synar and Rodino:

[Mr. SYNAR.] Could the gentleman explain what rights are reserved to the debtor and trustee under section 521(2)(C)?

Mr. RODINO. Mr. Chairman, will the gentleman yield?

Mr. SYNAR. I yield to the chairman of the committee.

Mr. RODINO. Mr. Chairman, this section is designed to make it clear that the newly imposed duty on the debtor to act promptly with regard to property which is security for a creditor's claim does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property. For example, the debtor may have the right to exempt such property under section 522 of the code, and this right is not affected by the new provisions. Similarly, the trustee in bankruptcy may have the power to avoid the creditor's security interest on the property pursuant to the lien avoidance, preference, and fraudulent conveyance provisions of sections 544, 547, or 548 of the code. Such rights are not affected by these new provisions.

Id.

The earlier proposed amendment to section 521 indicates a legislative intent to punish the debtor for failure to timely state and perform his intention to redeem or reaffirm. Congress retrenched from that position after debate and compromise and fashioned a procedure which encourages out-of-court compromise between debtor and creditor in restructuring the debt. The new section is not intended to abrogate those substantive rights of exemption and redemption retained by the debtor. The notice and time limitation components of section 521(2) are intended to facilitate speedy resolution of debt compromise and repayment.

Given this explanation of the purpose of section 521(2), it appears that fol-

lowing a debtor's stated intent to retain the property in question and within the 45 days proscribed by section 521(2)(B), the parties should negotiate and execute a reaffirmation agreement pursuant to 11 U.S.C. § 524(c). That section provides:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to the extent enforceable under applicable non-bankruptcy law, whether or not discharge of such debt is waived, only if—

(1) Such agreement was made before the granting of the discharge . . .;

(2) Such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

(3) Such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that such agreement—

(A) represents a fully informed and voluntary agreement by the debtor; and

(B) does not impose an undue hardship on the debtor or a dependent of the debtor;

(4) The debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim. . . .

The record in the present case reflects that no reaffirmation agreement was executed by these parties. Moreover, all indications are that none would have been executed as the Debtor had decided against retaining the automobile prior to the filing of her petition. It is also important to note that even had one been executed the Debtor would have had 60 days within which to rescind it pursuant to section 524(c)(2).

In support of its position, the Plaintiff has cited *In re Artis* 27 B.R. 863 (Bankr.E. D.N.Y.1983) wherein Chapter 7 debtors were denied rescission of a reaffirmation agreement when the collateral was stolen within 30 days of the agreement's execution. The Court based its decision upon a determination that established principles of equitable rescission call for the parties being put back in the same position they were in prior to the making of the contract. Id. 865.

The case at bar differs from the *Artis* case in that we have here no reaffirmation agreement; we have only the Debtor's "statement of intentions."

It is not clear, particularly in light of the Plaintiff's January 27, 1986 letter to the Debtor's attorney, whether or not the Plaintiff received notice of the Debtor's statement of intentions filed with her petition and was thus given the opportunity to pursue a reaffirmation agreement. However, the Plaintiff's witness produced a received notice of the Debtor's first meeting of creditors which was unattended by the Plaintiff and was where the Debtor's intention was made clear.

Given the above facts, the discussed purpose of section 521(2), i.e. to facilitate speedy resolution of debt compromise and repayment without abrogating the substantive rights of the debtor, and the lack of an executed reaffirmation agreement, it is the Court's conclusion that the Debtor should not be denied discharge of this debt due to her subsequently changed intention.

IT IS THEREFORE HEREBY ORDERED that the Plaintiff's complaint is denied and the Debtor should be and is entitled to discharge this debt.