**In re Reginald O. HUGHES, Debtor.**

**Bankruptcy No. 187 71218.**

United States Bankruptcy Court,
E.D. New York.

Jan. 10, 1989.

David B. Shaev, New York City, for debtor.

Rood, Schwartz, Cohen, Ruderman by Keith N. Costa, White Plains, N.Y., for Chrysler Credit Corp.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

Must a chapter 7 debtor reaffirm a dischargeable personal liability under a retail installment contract in order to retain possession of the security where the agreement purports to give the creditor the right to accelerate and repossess the collateral upon the debtor's bankruptcy?

## FINDINGS OF FACT

1. On June 17, 1986 Hughes financed the purchase of an automobile through a retail installment contract now held by Chrysler Credit Corporation.

2. The face of the contract contains the following in bold print above the signatures:

SEE THE BACK OF THIS CONTRACT FOR ADDITIONAL AGREEMENTS

3. The back of the contract contains some fifteen additional agreements, including the following:

J. OUR RIGHT TO REQUIRE FULL PAYMENT OR TAKE THE VEHICLE. If

1. you fail to pay any payment when it is due, or

2. you fail to do any of the things required of you by this contract, or

3. you fail to insure the vehicle or to keep the vehicle insured as required by this contract, or

4. you file a court proceeding in bankruptcy, receivership or other insolvency or one is filed against you, or

5. you do or have done anything or anything happens that reasonably causes us to believe you will not pay your payments when due or not keep your agreements under this contract, and you do not reinstate the contract, we may demand immediate payment of the entire amount you owe us under this contract, or we can take the vehicle, or we can do both.

The entire amount you owe us includes all the remaining payments under your Payment Schedule plus any late charges and any other charges you are required to pay under this contract. In figuring the entire amount you owe us under this paragraph j. we will give you a refund credit for part of the Finance Charge figured the same as if you had prepaid this contract.

4. The contract is a printed form prepared by Chrysler, written by Chrysler, and supplied by Chrysler.

5. On June 11, 1987 Hughes filed a voluntary Chapter 7 petition together with a "Statement of Intention" indicating his intent to reaffirm this debt pursuant to § 521 and Local Rules 10 and 14. (Unless otherwise specified, all § numbers herein refer to The Bankruptcy Code, 11 U.S.C.)

6. At the time of the filing of the petition the fair market value of the automobile approximated $15,000.00.

7. At the time of the filing of the petition the amount outstanding under the contract approximated $18,360.00.

8. At the time of the filing of the petition, Hughes was current upon all of his obligations under the contract.

9. At the time of the making of this motion Hughes remained current upon all of his obligations under the contract.

10. Prior to the granting of Hughes' discharge, Hughes and Chrysler had entered into a § 524(c) reaffirmation agreement.

11. Hughes was represented by counsel during the negotiation of the reaffirmation agreement.

12. As required by § 524(c)(3)(A) and (B), prior to the discharge hearing Hughes had filed the reaffirmation agreement together with an affidavit certifying that the agreement represented a fully informed and voluntary agreement of the debtor and that it did not impose an undue hardship on the debtor or a dependent of the debtor.

13. Hughes attended both the discharge and reaffirmation hearings. The court informed him that the agreement was not required and explained both the legal effect and consequences of the agreement and of any default thereunder as mandated by § 524(d)(1)(A) & (B).

14. At the reaffirmation hearing Hughes exercised his rights under § 524(c)(2), and rescinded his reaffirmation. The court made a notation to that effect at the foot of the filed reaffirmation agreement.

15. By order dated December 22, 1987, Hughes was granted a discharge.

16. Thereafter, Chrysler was advised by their attorneys that their rights had been impaired by Hughes' discharge, and that the automobile should therefore be repossessed.

17. Chrysler's attorneys notified Hughes of the advice given their client.

18. Hughes then moved "for an order permitting debtor to reaffirm debt with Chrysler Credit Corporation for automobile."

19. The intent of Chrysler's attorneys, with regard to the activities recited in findings 16 and 17 above, was to obtain a reaffirmation of Hughes' personal liability to Chrysler.

DISCUSSION

The debtor apparently seeks to reopen the discharge hearing in order to withdraw his rescission of the reaffirmation agreement. This discussion shall proceed as if the request for relief were so worded.

We are inclined to grant Hughes' request to the extent necessary to permit his continued possession and use of the vehicle so long as he does not default on his contract. The question therefore becomes: may Chrysler repossess under the facts set forth above?

At the outset, we note that Hughes' appearance at his discharge and reaffirmation hearings was unnecessary. § 524(c) as amended no longer requires either the debtor's appearance or court approval as a prerequisite to the enforcement of a reaffirmation agreement so long as the debtor is represented in the reaffirmation negotiations by counsel who certifies to the court that the agreement represents a fully informed and voluntary agreement by the debtor and does not impose an undue hardship on the debtor or a dependent of the debtor. Although these requirements had been met, Hughes' subsequent rescission of the reaffirmation agreement pursuant to § 524(c)(2) leaves the parties in the same position as if Hughes had never reaffirmed: no contract between the debtor and the holder of a claim may be enforced if its consideration is the repayment of the discharged debt. § 524(c)

The retail installment contract created two separate relationships, each generating its own distinct rights and duties. Hughes incurred an *in personam* obligation to make the required payments, (his I.O.U., in effect). This entitled Chrysler upon default to satisfy its balance out of any of Hughes' non-exempt assets. Independently, *In rem* rights were created such that if payments were not made when due, or if any other provision of the contract was not faithfully honored, Chrysler might then proceed against the security wherever it could be found.

■ The § 727 discharge released Hughes' *in personam* obligations to Chrysler. It did not affect Chrysler's *in rem* rights as against the security. *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886); *Chandlers Bank of Lyons v. Ray,* 804 F.2d 577, 579 (10th Cir.1986); *Behrens v. Woodhaven Ass'n,* 87 B.R. 971, 975 (Bankr.N.D.Ill.1988); 11 U.S.C. § 522(c).

Are Chrysler's threatened activities of balance acceleration and repossession permitted? We think not for several reasons.

First, there can be no "demand [by Chrysler for Hughes to make] immediate payment of the entire amount you owe us ..." (Installment Contract, paragraph J, subsection 5) because Hughes' personal obligation to make payments to Chrysler has been discharged. This is not to say that a post-discharge default by Hughes would not enable Chrysler to enforce its lien for the entire amount remaining upon its books. All that has been discharged is Chrysler's *in personam* rights as against Hughes, i.e., the right "in the event of a default" to sue Hughes for the unpaid balance in full, or the balance remaining after repossession and resale.

As of the discharge, this "balance" ceased to exist *as a personal liability* of Hughes. It survives only as a measure of the extent to which Chrysler's lien may be enforced against the vehicle in the event of a post discharge default by Hughes.

Second, § 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover or offset any such debt as a personal liability of the debtor...." Since Hughes' personal liability to Chrysler has been discharged, § 524 prohibits Chrysler's threatened activities to the extent that they seek to create personal liabilities on the part of Hughes.

■ We conclude that Chrysler's threat to accelerate and repossess is an attempt to collect as the personal liability of Hughes those payments which they are now collecting not as his personal liability. The value of Chrysler's security is substantially less than the balance secured by its lien. Since the purchase, Hughes has been making prompt and regular payments notwithstanding his bankruptcy. Chrysler has never claimed that the security is depreciating faster than the principal balance is being reduced, or that it is otherwise less than adequately protected. In fact, were Chrysler to carry out its threat to repossess it would recover substantially less than if Hughes were simply permitted to continue the payments which have always been timely. We can think of no reason why Chrysler would now want to exercise its election to enforce its rights in the collateral other than to compel Hughes to reaffirm thereby enabling Chrysler to enforce the discharged balance against Hughes as a personal liability. Having so found in finding number 19 above, we now conclude as a matter of law that their election to accelerate and declare a default is prohibited by § 524(a)(2). *In Re Winter*, 69 B.R. 145, 146 (Bankr.D.Or.1986)

Third, the exercise of such election for no economically prudent reason other than to coerce the debtor into waiving his right to discharge his personal obligations violates the duty inherent in every contract to perform in good faith. U.C.C. § 1–203; *See e.g., Kirke LaShelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87, 188 N.E. 163, 167 (1933).

Fourth, the granting to a debtor of a "fresh start" is the quintessence of the bankruptcy code, and the litmus against which any argument impacting discharge must be compared in determining compliance with congressional intent. Although no evidence has been offered by either party to indicate the reason Hughes desires to retain the automobile, the application itself is tacitly premised upon Hughes' need of the vehicle for family transport. Were we to grant Hughes' application, then in the event of the vehicle's deterioration or destruction through no fault of either Hughes or Chrysler prior to satisfaction of the reaffirmed debt, the personal liability remaining as a result of our approval might well render him ineligible to obtain the credit which he would need to obtain a replacement vehicle. Clearly this would serve neither the function nor the goal of the bankruptcy code.

Fifth, paragraph J of the contract upon which Chrysler relies (quoted in finding # 3 above) does not clearly establish those rights which Chrysler now seeks to exercise. In paragraph J, the bold part of the first line (before the word "if") is merely a descriptive title. Subparagraph 5 is structured in such a fashion as to make the right to repossession applicable only under the conditions set forth in that subparagraph, i.e. "you do or have done anything or anything happens that reasonably causes us to believe you will not pay your payments when due or not keep your agreements under this contract...." The rights of acceleration and repossession are not so located within the printed text as to be clearly applicable to each of the earlier subparagraphs such as the one describing the filing of "a court proceeding in bankruptcy." As written, the offending provision is not even contained within a complete or grammatically proper sentence.

While we have no doubt that Chrysler may have intended to reserve for itself the right to accelerate and repossess in the

event of the purchaser's bankruptcy, that is not what their contract states. Furthermore, we have serious doubts as to Hughes' ability to glean that intent from the confusing and enigmatic language Chrysler chose to use in its contract. The ambiguity must therefore be resolved in Hughes' favor; Chrysler can not be held to have any greater rights in its security than those which were unequivocally communicated to the purchaser within the four corners of the document.

Sixth, while we are not unaware of the decisions of our colleagues in this district in *Chrysler Credit Corporation v. Sparago (In Re Sparago)*, 31 B.R. 552 (Bankr.E.D.N.Y.1983) and *Chrysler Credit Corporation v. Schweitzer (In Re Schweitzer)*, 19 B.R. 860 (Bankr.E.D.N.Y.1982) which reach a different result, we think that those cases are distinguishable on their facts. To the extent that they are not, we are in agreement with the reasoning contained in such cases as *Riggs National Bank of Washington D.C. v. Perry*, 729 F.2d 982 (4th Cir.1984), *Century Bank at Broadway v. Peacock (In re Peacock)* 87 B.R. 657 (Bankr.D.Colo 1988) and *Berenguer v. Bank South, N.A. (In re Berenguer)*, 77 B.R. 959 (Bankr.S.D.Fla.1987), because as set forth above, we believe that they more closely adhere to Congress' intent.

Since Hughes' only reason to seek a reopening of his discharge and reaffirmation hearings was to enable him to nullify his rescission of the reaffirmation agreement with Chrysler, we see no need to grant him the relief he seeks. If, however, on appeal it should be determined that Hughes may not retain possession of the vehicle without reaffirmation, we would then entertain a renewal of his application on the basis of the need which he would then be able to demonstrate.

Settle Order.