**In re Patricia McNEIL, Debtor.**

**Bankruptcy No. 89–14765S.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 24, 1991.

Jack K. Miller, Philadelphia, Pa., for debtor.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, Pa., Drew Salaman, Salaman, Salaman & Cherwony, P.C., Philadelphia, Pa., for GECC.

James J. O'Connell, Ass't. U.S. Trustee, Philadelphia, Pa.

Leslie B. Baskin, Philadelphia, Pa., Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant contested matter presents the issue of whether a pre-petition secured creditor's demand of $610.40 for "special damages," incidental to its claim in a post-discharge state-court replevin suit seeking recovery of its collateral, constitutes a violation of the discharge injunction of 11 U.S.C. § 524(a). We disagree with the secured creditor's assertion that this demand, asserted as compensation for attorneys' fees and repossession costs incidental to pursuing its replevin action, necessarily arose post-petition simply because its state-court complaint was filed post-petition. Instead, we find that the creditor's demand for "special damages" was a pre-petition claim against the Debtor which was extinguished by operation of her bankruptcy discharge. Therefore, we hold that the assertion of this demand violates § 524(a). We will award the Debtor the $300 amount which she seeks as her attorney's fees for pursuit of this matter.

### B. FACTUAL AND PROCEDURAL HISTORY

PATRICIA McNEIL ("the Debtor") filed an individual Chapter 7 bankruptcy petition on December 29, 1989. Her Schedules included a claim of "Levitz (GECC)" as an unsecured debt. However, the Debtor now concedes that her indebtedness to the Respondent, GENERAL ELECTRIC CAPITAL CORPORATION ("GECC"), is secured by a purchase-money security interest in certain furniture purchased by the Debtor pursuant to a Revolving Charge Account Agreement of August 16, 1989 ("the Contract") with GECC's assignor, Levitz Furniture Corporation ("Levitz").

In the statement of her intention regarding consumer debts secured by estate property accompanying her Schedules, filed pursuant to 11 U.S.C. § 521(2)(A), the Debtor expressed a desire to retain the furniture in issue subject to GECC's security interest. However, the Debtor took no action, such as the filing of a motion to redeem or reaffirm the debt with respect to the aforementioned collateral. On May 14, 1990, GECC filed a Motion for Relief from Automatic Stay and/or Adequate Protection ("the Stay Motion"). In the Stay Motion, GECC alleged that it had received no payments from the Debtor since October 15, 1989. The Debtor filed an Answer to the Stay Motion, admitting that no payments had been made since October 15, 1989, but averring that GECC's interests were adequately protected because the entry of a Discharge Order, which would terminate the Stay, was imminent. See 11 U.S.C. § 362(c)(2)(C).

On May 15, 1990, the day after the Stay Motion was filed, a Discharge Order was indeed entered. After GECC withdrew the Stay Motion, the Debtor's case was closed on July 12, 1990.

On or about December 1, 1990, GECC filed a Complaint in Replevin against the Debtor in the Court of Common Pleas of Delaware County, Pennsylvania ("the Replevin Suit"). In the Replevin Suit, GECC averred that it was a fully secured creditor of the Debtor, and that its claim of a right to obtain possession of the secured proper-

ty, a sofa and a loveseat, subject to its purchase money security interest, survived the Debtor's bankruptcy discharge. In its prayer for relief, however, GECC sought not only possession of the sofa and loveseat, but "special damages in the amount of $610.40 for attorney's fees plus the costs of repossession." The latter prayer was based upon a clause in the contract between the Debtor and Levitz which appears to read[1] as follows:

DEFAULT If you do not pay any minimum payment when due or breach any other terms of this agreement, we may demand, subject to any notice of default and right to cure default required by state law, the entire unpaid balance be paid immediately, and will start a lawsuit for collection of this balance. You agree to pay reasonable attorney's fees if your account is returned for collection to an attorney who is not our salaried employee. Reasonable attorney's fees and court costs will be awarded to the prevailing party in any action on this agreement. We also reserve our rights and remedies pertaining to repossession and resale of any repossessed merchandise as provided under applicable law.

In response to GECC's filing of the Replevin Suit, the Debtor filed, on April 19, 1991, the instant Motion to Reopen Case and Hold GECC in Civil Contempt ("the Motion") in this court. In the Motion the Debtor seeks to recover "counsel fees in the amount of $300" and to have this court impose a "fine for civil contempt" payable to the Clerk of Court against GECC in light of its alleged "inappropriate request for attorney's fees, which resulted in the filing of this motion."

In its Answer to this Motion, GECC stated, *inter alia*, that "the Debtor, knowing full-well that she was not going to redeem the collateral or reaffirm the debt," wrongfully "held off the creditor until a discharge was granted." This action of the Debtor, according to GECC, justified its attempt to recover "special damages" in

the Replevin Suit. GECC further points out that the Pennsylvania Rules of Civil Procedure authorize "special damages" in a replevin action. GECC contends that such "special damages" are appropriate compensation to it for the Debtor's "unlawful" retention of the furniture "from the date which it communicated to the Debtor its desire that goods be returned, that being the date of service of the Motion for Relief from Stay," on May 14, 1990, to date. Thus, GECC contends that "post-petition attorney's fees are incidental to the exercise of [its] *in rem* rights, and necessary to maintain the balance of equities at the heart of Bankruptcy Code policies."

The Motion was listed before us for a hearing on May 16, 1991. Counsel for the Debtor and GECC appeared, although neither presented any testimony, nor was there a request by either party to make any further submissions to this court. GECC cited *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186 (3d Cir.1987); *In re Ryan*, 100 B.R. 411 (Bankr.N.D.Ill.1989); and *In re Horton*, 87 B.R. 650 (Bankr.D. Colo.1987), in support of its position during an ensuing legal argument.

C. DISCUSSION

1. ALTHOUGH GECC'S LIEN ON THE DEBTOR'S FURNITURE SURVIVED HER DISCHARGE, THE DEBTOR'S PERSONAL LIABILITY TO GECC WAS DISCHARGED, AND GECC'S ATTEMPTS TO COLLECT ON PERSONAL CLAIMS ARE SUBJECT TO THE DISCHARGE INJUNCTION.

The determinative matter at issue in this matter is whether GECC's claim of "special damages" survived the Debtor's discharge in bankruptcy, as did its lien on the collateral. GECC, as was indicated *supra*, prominently cited *Lellock*, *supra*, in support of its position. However, *Lellock* merely stands for the apparently uncontested proposition that a valid lien is not extinguished by a discharge under Chapter 7, but rather "pass[es] through bankruptcy

---

**1.** The copy of the contract attached to the pleadings is barely legible, but our request for a

better copy from GECC's counsel was unavailing.

unaffected." *Lellock*, 811 F.2d at 189. *Accord, e.g., Johnson v. Home State Bank,* — U.S. —, —, 111 S.Ct. 2150, —, — L.Ed.2d — (1991).

■ It is clearly true that a valid, unavoided lien survives discharge, despite the Debtor's listing of a secured creditor as unsecured or listing of the collateral as exempt in her schedules. *See In re Pierce,* 29 B.R. 612, 614 (Bankr.E.D.N.C.1983). A secured creditor with an interest in consumer goods has no affirmative duty during bankruptcy proceedings to ensure that its valid pre-bankruptcy lien survives, except to defend against the debtor or trustee's attempts to avoid it. *See, e.g., In re Dickinson,* 24 B.R. 547, 550 (Bankr.S.D. Cal.1982) (valid lien created by pre-bankruptcy contract survives debtor's Chapter 7 discharge notwithstanding creditors' inactivity during the bankruptcy proceeding); and *Pierce, supra,* 29 B.R. at 613–614.

■ Accordingly, the discharge injunction of § 524(a)[2] does not prevent a secured creditor from enforcing a valid prepetition lien which was not avoided during bankruptcy. *See, e.g., Chandler Bank of Lyons v. Ray,* 804 F.2d 577 (10th Cir.1986) (creditor's *in rem* action to recover its security interest is not precluded by § 524); *In re Walls,* 125 B.R. 908 (Bankr.D.Del. 1991) (post-discharge attempt to enforce pre-bankruptcy judgment lien does not violate § 524); and *In re Weathers,* 15 B.R. 945 (Bankr.D.Kan.1981) (the discharge injunction effected by § 524(a) does not apply to a creditor's post-discharge action to recover property subject to a valid pre-bankruptcy lien).

■ However, the Bankruptcy Code, in § 524(a), provides that a discharge only acts as an automatic permanent injunction against a creditor's attempts to recover those debts which were a personal liability of the debtor prior to bankruptcy. *See In re Hughes,* 95 B.R. 20, 22 (Bankr.E.D.N.Y. 1989); *Pierce, supra,* 29 B.R. at 615 (creditor's attempt to collect underlying debt as a personal liability of debtor, in addition to pursuing its pre-bankruptcy lien on property, violates § 524); and *In re Harvey,* 88 B.R. 863, 865 (Bankr.N.D.Ill.1988) (creditor would violate discharge injunction if it were seeking a personal deficiency judgment against debtor pursuant to foreclosure proceedings where the entire debt secured by the collateral was provided for in the debtor's Chapter 13 plan). The policy underlying Chapter 7 of the Bankruptcy Code is to implement a "fresh start" for a debtor. The legislative history indicates that § 524 was enacted to further this goal by saving a debtor the needless expense of defending actions to collect discharged debts. 3 COLLIER ON BANKRUPTCY, ¶ 524.01, at 524–5 to 524–8 (15th ed. 1991). Enforcement of § 524 may include holding violators in contempt of court for attempts to collect discharged debts. *See Harvey, supra,* 88 B.R. at 865–66; *In re Barbour,* 77 B.R. 530, 532 (Bankr.E.D.N.C.1987); and *In re Kaping,* 13 B.R. 621 (Bankr.D.Or. 1981). It may also include sanctions such as awarding the debtor costs for having to defend against such actions. *See Pierce, supra,* 29 B.R. at 615.

---

**2.** § 524. Effect of discharge

 (a) A discharge in a case under this title—
 (1) voids any judgment at any time obtained, to the extent that such a judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and
 (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(c)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived....

The *Pierce* court explains that, despite the language contained in § 524(a)(3) referring to "property of the debtor" subject to the discharge injunction, see page 607 n. 2 *supra,* only property which is not subject to a valid lien is removed entirely from the grasp of creditors seeking satisfaction of pre-bankruptcy debts. 29 B.R. at 614. Encumbrances on a debtor's property have been distinguished from personal liabilities of the debtor with regard to dischargeability in bankruptcy because effectuation of the policy underlying bankruptcy does not require that the former be extinguished. *See Weathers, supra,* 15 B.R. at 614. *See also Lellock, supra,* 811 F.2d at 189 (permitting a secured creditor's valid pre-petition lien to be discharged would be "clearly repugnant to bankruptcy policy"). It has been said that, if valid liens on property were extinguished along with personal debts and liabilities, this would effect more of a "head start" than a "fresh start," and such a policy could have the detrimental effect of unreasonably encouraging homeowners and other property owners to file bankruptcy petitions. *Weathers, supra,* 15 B.R. at 951. Therefore, the scope of the discharge injunction, intended to afford a debtor freedom from future harassment concerning discharged debts, does not reach actions to enforce valid pre-petition liens. *Id.* at 951–952. Thus, GECC's lien on the Debtor's furniture, if not the Debtor's personal liability to it on the Contract, survived her discharge.

2. SINCE THE DEBTOR WAS NOT OBLIGED TO REDEEM OR REAFFIRM THE CONTRACT AS A CONDITION FOR RETENTION OF THE FURNITURE IN ISSUE, HER RETENTION OF THE FURNITURE WAS NOT UNLAWFUL.

However, we do not agree with GECC's contention that the Debtor's retention of the furniture in issue pending discharge of her Chapter 7 case was "unlawful." Retention of the furniture was, more correctly, an instance of the Debtor's taking advantage of the benefit of the automatic stay in the absence of the creditor's obtaining relief therefrom. It was only because GECC did not seek relief from the stay until more than four months after the Debtor's petition was filed, and only shortly before her discharge was granted, that the stay remained in place until discharge.

This court is in accord with those decisions holding that a Chapter 7 debtor may remain in possession of property subject to a valid lien without reaffirming the debt pursuant to 11 U.S.C. § 524(c) or redeeming the collateral pursuant to 11 U.S.C. § 722. *In re Cabrillo,* 101 B.R. 443, 450 (Bankr.E.D.Pa.1989). *Accord, e.g., Lowry Federal Credit Union v. West,* 882 F.2d 1543, 1546 (10th Cir.1989); *Riggs National Bank v. Perry,* 729 F.2d 982, 985–86 (4th Cir.1984); and *In re Hunter,* 121 B.R. 609, 614–16 (Bankr.N.D.Ala.1990). *Contra, e.g., In re Edwards,* 901 F.2d 1383, 1385–87 (7th Cir.1990); and *In re Chavarria,* 117 B.R. 582, 584–85 (Bankr.D.Idaho 1990).

*Riggs, supra,* holds that, where a debtor remains current on the loan payments, a creditor's interests are preserved even with the automatic stay in place, despite the absence of a reaffirmation of the underlying contract or a redemption of the property by the debtor. 729 F.2d at 984. *Accord, Cabrillo, supra,* 101 B.R. at 450; and *In re Missimer,* 44 B.R. 219, 219 (Bankr.E.D.Pa.1984) (TWARDOWSKI, J.). However, even where a debtor has defaulted on payments while indicating intent to retain the collateral, it does not necessarily follow that reaffirmation or redemption becomes the debtor's *duty. See In re Barriger,* 61 B.R. 506, 509–10 (Bankr.W.D.Tenn. 1986) (debtor's stated intent pursuant to § 521 to retain collateral does not give a creditor a right to seek punishment of debtor for failure to "perform duties" under the Code). As *Riggs* concludes, if a debtor were to have this unilateral obligation, the protective function of the automatic stay would be rendered useless as a privilege afforded the debtor in bankruptcy for fending off creditors' attempts to recover on debts or liens. 729 F.2d at 986.

On the other hand, a debtor has the option of exercising her rights throughout the bankruptcy proceedings in defense of a creditor's attempt to have the automatic

stay lifted. *E.g., In re Elicker,* 100 B.R. 180 (Bankr.M.D.Pa.1989) (Chapter 7 debtor in default in payments on secured loan can justify continuing the stay and retaining possession of collateral only by either redeeming the collateral, reaffirming the debt, or converting to Chapter 13). However, the same debtor need not invoke these rights, in order to keep the collateral, while the stay remains unchallenged, since the stay functions to protect the debtor from all collection activities. The stay remained unchallenged for most of the duration of the present case. Since GECC did not seek relief from the stay until the day before the Debtor's discharge, the Debtor received the benefit of the rights and privileges afforded her under the Code and was not subject to affirmative obligations which would effectively abrogate those benefits.

Furthermore, cases dealing with a debtor's non-compliance with § 521 typically discuss only the creditor's duties regarding the effectiveness and enforcement of that provision. *E.g., In re Bayless,* 78 B.R. 506, 510–511 (Bankr.S.D.Ohio 1987); *In re Williams,* 64 B.R. 737, 738 (Bankr.S.D.Ohio 1986); and *Barriger, supra,* 61 B.R. at 509–10. *Barriger* argues that a "theme of debt repayment" pervades the legislative history of § 521, with an emphasis on encouraging out-of-court resolutions regarding debt compromise and repayment, while at the same time not denying a debtor any of substantive rights such as exemption and redemption. *Id.* at 509. Thus, according to *Barriger,* a debtor's stated intent to retain collateral should be followed by attempts by both parties to reach a compromise regarding the debt. *Id.* The time limitations are intended to expedite the process and, if a creditor fails to follow up on a debtor's intentions and pursue a resolution, the creditor cannot obtain relief based on the debtor's non-compliance. *Barriger, supra, id.* at 510. Similarly, in *Williams, supra,* 64 B.R. at 738, the court refused to hold a debtor in contempt for failing to comply with §§ 521(2)(A), (B) for the reason that the creditor did not demonstrate any prior effort to attain compliance. Pursuant to 11 U.S.C. § 704(3), the trustee is charged with ensuring the debtor's compliance with § 521, and the *Williams* creditor

never sought the trustee's involvement. *Id.*

Finally, the *Bayless* court, 78 B.R. at 510, described the creditor's role under § 521(2) as "significant." The court expressly stated the purpose behind § 521 as motivating "*both* parties to resolve the matter quickly." *Id.* The creditor in *Bayless* failed to attend creditors' meetings, move for relief from the automatic stay via § 362(d), or seek the Trustee's involvement. *Id.* at 511. Therefore, the court concluded that the creditor's alleged damages were not attributable to the Debtor's non-compliance with § 521. *Id.*

GECC assumes that the Debtor's alleged failure to comply with § 521(2)(B) bestows upon it the automatic right to repossess the collateral and to invoke the corresponding obligation of the Debtor to surrender it. This assumption is contradicted by the aforementioned policies manifested by the automatic stay provision, the ascertainable legislative purpose behind § 521, and the lack of an enforcement mechanism for that section besides appeal to the Trustee to perform his duty under § 704(3). In *Williams, supra,* the court disposed of the creditor's argument that Bankruptcy Rules "require the surrender of the collateral ... if the debtor is not going to reaffirm a secured debt" by simply stating that it was not aware of any such requirement in the Code nor had the creditor identified its source. 64 B.R. at 738. Furthermore, the creditor in *Lowry, supra,* made essentially the same argument unsuccessfully. The court pointed to Congress's failure to provide enforcement mechanisms for a debtor's non-compliance with § 521, such as a penalty to the debtor or a specific remedy for a creditor, and concluded that violations of that section were not intended to give rise to increased creditors' rights. 882 F.2d at 1546.

3. THE DEBTOR'S ENTIRE LIABILITY TO GECC IS A PRE–PETITION CLAIM, PROHIBITING GECC FROM ENFORCING ANY ASPECT OF THE DEBTOR'S PERSONAL LIABILITIES TO IT.

GECC's alternative theory for justifying its making a claim for "special damages" in

the Replevin Suit is that the Debtor's post-discharge behavior, again referred to as "unlawful," caused it to incur costs which would be recoverable both under state law applicable to replevin actions as well as under the Contract between the parties. Since the Contract gave rise to the security interest which undisputedly survived discharge, GECC urges that the clause in that Contract pertaining to recovery of costs incident to enforcing that security interest must have survived the Debtor's discharge.

■ It is important to note at the outset, before any discussion of why the law does not support GECC's contention, that the Contract clause, quoted at page 606 *supra,* is at best ambiguous on the issue of whether it allows recovery of "reasonable attorney's fees" incurred in a replevin action. It appears that it is only a debtor whose account is "returned for collection" of the unpaid balance who is liable for "reasonable attorney's fees." GECC is admittedly confined to an action to recover the goods, not collect the balance, by reason of § 524(a). As the Contract form was obviously drafted by GECC or its assignor, Levitz, this ambiguity must be construed against GECC. *Cf. In re Fricker,* 115 B.R. 809, 825–26 (Bankr.E.D.Pa.1990); *In re Garnett,* 99 B.R. 293, 296–97 (Bankr.E.D. Pa.1989); and *In re Vitelli,* 93 B.R. 889, 896–97 & n. 4 (Bankr.E.D.Pa.1988) (clause permitting mortgagee to recover attorney's fees in collection action found not to justify fee recovery for services performed in bankruptcy court).

■ Assuming *arguendo* that the Contract could be said to permit recovery of costs incurred solely in pursuit of replevin of goods, GECC's contention must nevertheless be rejected because its replevin claim, including the claim for incidental costs and "reasonable attorney's fees" provided in the Contract, was a pre-petition claim. GECC's right to enforce its lien on the furniture survived discharge only because it did not involve the personal liability of the Debtor. The incidental claim for "special damages," however, clearly represents an attempt to collect upon a personal liability of the Debtor and, as such, was discharged along with her other debts.

The claim for "special damages" was a pre-petition claim regardless of the accuracy of GECC's contention that it accrued post-petition. The Debtor's default on her payments to GECC, beginning on October 15, 1989, gave rise to a possible claim by GECC for, *inter alia,* repossession of the furniture as well as whatever costs it incurred along with that action. Since the Debtor did not file her bankruptcy petition until December 29, 1989, GECC had over two months prior to bankruptcy to bring an action to vindicate such rights, but it did not do so. Thereafter, the automatic stay precluded such an action.

The Bankruptcy Code defines a "claim," in 11 U.S.C. § 101(4)(A), expansively, as a "right to payment," and has been broadly interpreted, thereby permitting a wide spectrum of debtors' obligations to be discharged. *See, e.g., Johnson, supra,* —— U.S. at ——, 111 S.Ct. at 2153–54; and *Pennsylvania Department of Public Welfare v. Davenport,* —— U.S. ——, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). The term is broad enough to include "contingent" claims, which are defined as those " 'conditioned upon the occurrence of some future event which itself is uncertain or questionable.' " *Ryan, supra,* 100 B.R. at 415, quoting BLACK'S LAW DICTIONARY 290 (5th ed. 1979).

However, in *In re M. Frenville Co.,* 744 F.2d 332, 337 (3d Cir.1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), the Court of Appeals for the Third Circuit determined that a "right to payment" does not arise until, as a threshold requirement, it may form the basis of a cause of action under state law. Thus, under *Frenville,* a claim is post-petition if it could not have been brought to court prior to the filing of a debtor's bankruptcy petition.

The *Frenville* definition of a "claim" affords it a more narrow construction than most courts have been willing to give it. For instance, in *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 202–03 (1988), the Court

of Appeals for the Fourth Circuit held that a "claim" arises when those acts which gave rise to the debtor's liability are performed, not when the harm ultimately caused by those acts becomes evident. Under this analysis, a claim may be "contingent," but is still considered pre-petition as long as it can be traced back to some pre-petition behavior of the debtor related to the ultimate claim, regardless of when the harm caused by that behavior became identifiable.

Nevertheless, despite the relatively narrow interpretation of "claim" in *Frenville,* GECC's claim was a pre-petition liability of the Debtor under even this interpretation because GECC could have sought its "special damages" prior to the Debtor's bankruptcy filing had GECC chosen to pursue its right to replevin at that time. GECC had a "right to payment" regarding these incidental costs as soon as it had a right to exercise its legal remedies upon the Debtor's default. "[W]hen parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement." 744 F.2d at 336.

Had GECC taken action, as it could have, prior to the filing of the Debtor's bankruptcy petition, to collect the underlying debt or to repossess the collateral, and had included therein a claim for costs and "reasonable attorney's fees," the claim for incidental costs would clearly have been pre-petition under *Frenville* regardless of whether it was based on the Debtor's "unlawful detention" of the collateral, the Contract, or state law applicable to replevin actions. And such claims for such incidental costs would have been dischargeable.

The fact that GECC chose not to exercise its remedies immediately following the Debtor's default should not affect the dischargeability of those portions of its claim which constitute personal liabilities of the Debtor. In other words, GECC is arguing that what clearly would have been a claim for pre-petition "damages" in an action brought prior to bankruptcy, or even during bankruptcy if GECC had been granted

relief from the automatic stay, is now a post-petition claim simply because of the timing of the creditor's action. This position is not supported by the holding in *Frenville.* To the contrary, the fact that GECC may have been on the verge of pursuing its right to repossess the collateral, including its claim against the Debtor personally for recovery of its "special damages," may have been one of the "immediate financial pressures which caused the debtor to go into bankruptcy." *Frenville, supra,* 744 F.2d at 334.

Furthermore, there is no support for the proposition that the dischargeability of a debt depends on its relation to a surviving lien, *i.e.,* whether the debt represents the underlying obligation or "merely" the costs incidental to pursuing the lien. In the context of an installment sales contract, one would expect the protection of the discharge injunction to be most useful against claims to recover the underlying payment obligations. *See, e.g., Hughes, supra,* 95 B.R. at 22–23; and *Pierce, supra,* 29 B.R. at 615. Such debts are typical of the type of obligations discharged in bankruptcy for the benefit of the debtor's "fresh start." However, nothing in the Code or in the case law suggests that only those obligations evidenced by a contract and a history of periodic payments were intended to be discharged, while others, less "definite," were not. *See, e.g., In re Burson,* 107 B.R. 285 (Bankr.S.D.Cal.1989) (pre-petition advance bonus payments could not be recouped from debtor post-discharge, by reason of § 524(a)(2), despite the debtor's failure to "earn" entire amount of bonus). In fact, the language of the Code and the legislative history provide little guidance as to what limitations on the definitions of "claim" apply when determining the obligations from which a Chapter 7 debtor may be discharged.

■ As noted previously, the line of cases which discuss the survival of valid pre-petition liens are very specific about distinguishing between liens and personal liabilities, because bankruptcy policy only favors discharging the latter. A very fundamental distinction between liens on prop-

erty and personal liabilities forms the basis for permitting liens to survive bankruptcy despite discharge of the underlying debt. This emphasis requires the conclusion that, if a "claim" is not classified as a lien on property, it is a personal liability which necessarily becomes a discharged debt.[3]

### 4. THE CASES ADDRESSING THE DISCHARGEABILITY OF DEBTORS' LIABILITIES FOR CONDOMINIUM FEES FALLING DUE POST–PETITION DO NOT SUPPORT GECC'S POSITION.

The Code provides only a circumscribed list of specific instances in which pre-petition liabilities survive discharge. *See* 11 U.S.C. § 523(a). *Cf.* 11 U.S.C. § 727(a). The issue of when a liability is or is not pre-petition has also arisen in a line of cases referenced cited by GECC in its citation to *Ryan, supra;* and *Horton, supra,* in which a condominium association, as creditor, seeks to collect post-petition maintenance fees accrued under a pre-petition agreement despite the entry of a discharge order in favor of a debtor-condominium owner. *See also In re Miller,* 125 B.R. 441 (Bankr.W.D.Pa.1991). The debtors in these cases have argued that collection of even post-petition maintenance fees violates the discharge injunction, on the theory that their respective personal liabilities for post-petition assessments are pre-petition contingent claims of the condominium associations which were extinguishable by their respective discharges. *E.g., Ryan, supra,* 100 B.R. at 413; and *Horton, supra,* 87 B.R. at 652. In *Miller,* the debtors sought to reopen their bankruptcy case in order to reject their condominium agreement and thereby discharge their liability for future fees otherwise due under the agreement. 125 B.R. at 442.

The courts have come to opposite conclusions on this issue. In *Miller,* the court permitted an amendment of the debtors' schedules to include their condominium agreement. *Id.* at 443. The court then declared the debtors discharged from liability thereon for all future assessments. *Id.* Following the reasoning of *Ryan, supra,* and *In re Turner,* 101 B.R. 751 (Bankr.D. Utah 1989), the *Miller* court decided that, where debtors have been discharged from an underlying secured obligation and have relinquished the property subject to the security, no benefit could accrue to them as a result of the secured obligation. *Id.* Therefore, the condominium association's claim was determined to be dischargeable. *Id.* The court found it to be irrelevant that the debtors retained record ownership of the property while the lien holder declined to foreclose. *Id. Accord, In re Elias,* 98 B.R. 332 (N.D.Ill.1989); *In re Cohen,* 122 B.R. 755 (Bankr.S.D.Cal.1991); and *In re Montoya,* 95 B.R. 511 (Bankr.S.D.Ohio 1988).

On the other hand, *Horton* stands for the contrary proposition that a condominium association can collect post-petition assessments for maintenance fees under a pre-petition agreement despite the debtors' Chapter 7 discharge. Analyzing the issue in terms of § 101(4)(A)'s definition of a "claim," *Horton* held that, since the creditor's "right to payment" of the post-petition fees did not arise until such fees became due, which occurred after the Debtor's discharge, the creditor's claim for the fees was not subject to the discharge. 87 B.R. at 652. Furthermore, the debtor's liability for such debts had not been extinguished by the discharge because, according to the court, the Bankruptcy Code only intended to discharge pre-petition *debts,* not liabilities. 87 B.R. at 652. Because the

---

**3.** Whether a lien on property constitutes a "claim" for purposes of the Bankruptcy Code was a major focus of the line of cases raising the issue of whether a debtor could cure a mortgage default in a "Chapter 20" case, *i.e.,* a Chapter 13 case following a Chapter 7 case. *See, e.g., In re Johnson,* 904 F.2d 563, 565–66 (10th Cir.1990), *rev'd sub nom. Johnson v. Home State Bank, supra; In re Neal,* 126 B.R. 730, 733 (Bankr.E.D.Ky.1990) (per LEE, J.); and *In re*

*Hundley,* 99 B.R. 306, 307–08 (Bankr.E.D.Va. 1989). However, the Opinion of the Supreme Court, unanimously reversing the Tenth Circuit's *Johnson* decision, resolves this issue. The remaining mortgage lien is a "claim." *Johnson v. Home State Bank, supra,* — U.S. at —, 111 S.Ct. at 2153–54. This reasoning of *Johnson* is consistent with the prior law of this district. *See In re Lewis,* 63 B.R. 90, 92 (Bankr.E.D.Pa. 1986) (GOLDHABER, CH. J.).

debtors in *Horton* remained the record owners of the property, as well as retaining possession of the property, post-discharge, the court found that personal liability under the contract for any post-petition debts continued to rest with them. *Id.* *Accord, In re Rosteck,* 95 B.R. 558 (N.D.Ill.1988), *vacated,* 99 B.R. 400 (N.D.Ill.1989), *aff'd,* 899 F.2d 694 (7th Cir.1990); and *In re Harvey,* 88 B.R. 860 (Bankr.N.D.Ill.1988).

We decline to accept the rationale of either line of the condominium-fee cases as applicable to the present situation. The debts at issue in those cases differ from the debt claimed by GECC in several important aspects. First of all, in the case of maintenance fees which become due on a certain date, it is quite clear that, if such date occurred post-petition, the amount sought necessarily accrued post-petition. The same is not true in the present case. As discussed at pages 610–612 *supra,* the basis of GECC's claim for post-petition "special damages" is that the Debtor's "unlawful detention" of the furniture caused GECC to incur the expense of suing to replevy it. However, since we reject the contention that it was "unlawful" for the Debtor to "detain" the furniture without redeeming the furniture or reaffirming her indebtedness to GECC, *see* pages 608–610 *supra,* we cannot accept this analysis.

Furthermore, unlike condominium fees, which are periodically due under a contract, the accrual of GECC's replevin costs depended on the less definite occurrence of two events: the Debtor's default and GECC's need to invoke subsequent remedial action. The former clearly occurred prepetition, and the latter occurred post-petition only because that happened to be when GECC chose to take action. Thus, GECC's claim accrued post-petition, but did so only because of its own litigation tactics. Unlike the case of condominium association-creditor's claim for post-petition assessments, GECC's "right to payment" of the expenses existed pre-petition. GECC had merely chosen not to invoke its right, thus delaying its need to incur such expenses.

Moreover, we believe that the fees in issue in the condominium cases are more analogous to rental payments than they are to the Debtor's contractual obligation to pay for the furniture under the Contract between the Debtor and Levitz. If any claim of GECC for such incidental costs as its "special damages," including attorney's fees, survived the Debtor's discharge, it would have done so by virtue of the survival of GECC's valid lien. However, the condominium cases do not discuss the lien on the respective debtors' properties as relevant to the ascertainment of the respective debtors' liabilities for post-petition assessments. Instead, the condominium-fee cases address a debtor's continued liability for fees which periodically become due only upon the continued use and benefit of property. By way of contrast, the Debtor's liability to pay the full cost of the furniture ripened at the time of the purchase. When these distinctions are appreciated, the relevance of the condominium-fee cases to the present controversy becomes extremely doubtful.

5. THE BREADTH OF THE DEBTOR'S "FRESH START" PRECLUDES COLLECTION OF A MONETARY CLAIM OF "SPECIAL DAMAGES" IN ISSUE.

The apparent lack of any statutorily or judicially carved limitations on the discharge injunction leads to the necessary conclusion that it was intended to be broad. Claims which are imposed against a debtor personally are particularly susceptible to discharge. They are not like claims against a debtor's property only, which may be the subject of the exception of the application of the discharge injunction to a valid remaining lien.

Since the "special damages" claim in dispute here seeks monetary damages from the Debtor, it clearly constitutes an effort on the part of GECC to impose personal liability on the Debtor. We have explained why we believe GECC's entire monetary claim is pre-petition, even under the principles of *Frenville.* Furthermore, GECC's assertion that its claim accrued post-petition, and did so only because of the Debtor's "unlawful" behavior, is rebutted by the recognition that these circumstances

are equally attributable to GECC's own failure to act, either pre-petition or during the bankruptcy proceedings, to replevy its collateral, to obtain relief from the stay, or to negotiate a redemption or reaffirmation by the Debtor. See pages 608–610 *supra.* GECC has not cited any authority which would place on a debtor the burden of enforcing a creditor's post-petition remedies to collect pre-petition claims. Yet, GECC maintains, the Debtor's wrongfulness transformed its pre-petition claim into a post-petition one. This contention cannot be supported by the facts or the law.

 It is not significant that "special damages" are recoverable under the rules of court in a Pennsylvania replevin suit. It is obviously proper to file a collection action to recover an unpaid debt. However, if a claim is discharged, it cannot be collected, irrespective of the creditor's compliance with the rules of court applicable in ordinary circumstances.

Reviewing the cases alleging violations of the discharge injunction turns up the common thread of a debtor's "fresh start" as the "litmus against which any argument impacting discharge must be compared in determining compliance with congressional intent." *Hughes, supra,* 95 B.R. at 23. We find that the Debtor's "fresh start" would be impaired by permitting GECC to collect post-discharge what it could not have collected before or during the bankruptcy proceedings.

6. GECC SHALL BE ORDERED TO PAY THE REQUESTED ATTORNEY'S FEE OF $300 TO THE DEBTOR'S COUNSEL AS ITS SOLE SANCTION FOR ITS VIOLATION OF THE DEBTOR'S DISCHARGE INJUNCTION.

 A creditor's attempt to collect a pre-petition debt in violation of the discharge injunction of § 523(a) typically gives rise to the imposition of sanctions either for damages to the debtor for impairment of the "fresh start" caused by requiring the debtor to defend himself, *see, Pierce, supra,* 29 B.R. 612; and *Burson, supra,* 107 B.R. at 288 (creditor whose

action violated discharge injunction ordered to pay debtor's reasonable attorney's fees incurred defending action). A creditor's violation of the discharge injunction can be characterized as contempt of the discharge order of the bankruptcy court. We do not doubt our power to impose penalties for contempt of our orders. *See In re Clark,* 91 B.R. 324, 332–35 (Bankr.E.D.Pa.1988).

 However, every act of a creditor which is violative of the Bankruptcy Code does not justify imposition of damages for contempt. *See University Medical Center v. Sullivan,* 122 B.R. 919, 931–33 (E.D.Pa. 1990), *reconsideration denied,* 125 B.R. 121 (E.D.Pa.1991); and *Miller, supra,* 125 B.R. at 443 (sanctions for contempt of court for violation of automatic stay and for a violation of the discharge injunction, respectively, not imposed due to the existence of case law supporting both sides' positions). However, in interpreting the "actual damages" requirement for damages under 11 U.S.C. § 362(h), we have held that even innocent and well-grounded violations of the automatic stay should give rise to recovery of attorneys' fees when a debtor is required to resort to a court action to vindicate rights. *See In re McLaughlin,* 96 B.R. 554, 561–63 (Bankr.E. D.Pa.), *aff'd,* C.A. Nos. 89–2279, 89–3671, 89–3748 (E.D.Pa.Sept. 18, 1989).

 *Pierce, supra,* involved facts quite similar to the case at bar, *i.e.,* a creditor whose purchase-money lien on furniture survived discharge, but who violated the discharge injunction by attempting to recover the installment indebtedness as well as recover the secured property. 29 B.R. at 613. The *Pierce* court awarded the debtors their costs incurred defending the creditor's attempt to assert the debtor's personal liability for a discharged debt. *Id.* at 615.

The Debtor's counsel did not, apparently, expend any efforts in defending GECC's state-law action. Rather, he merely attacked the Replevin Suit as violative of the discharge injunction in this court, a process which saved the state courts from having to grapple with the bankruptcy-law issues

presented in the first instance. While the Debtor has proven no actual damages, we refuse to find the wrongful conduct of GECC to be so egregious as to merit a fine payable to the court.

The request of the Debtor's counsel for attorney's fees in the amount of $300 is modest enough to be respected. The nagging suspicion that GECC brought the Replevin Suit not to recover possibly useless used furniture but simply to impose a monetary liability upon the Debtor comparable to the value of the furniture by praying for recovery of $610.40 in "special damages"[4] cannot be suppressed. GECC must suffer some punishment for such conduct.

We will therefore award fees in the requested amount of $300 to the Debtor's counsel, under the procedural rubric of Bankruptcy Rule 9020(c), involving contempt proceedings. We will also enjoin GECC from pursuing the "special damages" designated in the Replevin Suit.

### D. CONCLUSION

An Order consistent with the conclusions reached in this Opinion will be entered.

### ORDER

AND NOW, this 24th day of June, 1991, upon consideration of the pleadings and arguments of counsel at the hearing of May 16, 1991, in reference to the Motion of the Debtor to Reopen her bankruptcy case and hold GENERAL ELECTRIC CAPITAL CORPORATION ("GECC") in civil contempt, it is hereby ORDERED AND DECREED as follows:

1. The Debtor's Motion to reopen her case, for the sole purpose of our deciding the instant Motion, is GRANTED. The Clerk shall close this case after the requisite period for filing Objections to this Order expires or after any Objections filed are resolved.

2. GECC is ENJOINED, pursuant to 11 U.S.C. §§ 524(a)(2), (a)(3), from making any further claim against the Debtor for "spe-

cial damages" or for any relief other than recovery of its secured property.

3. Pursuant to Bankruptcy Rules 9020(b) and (c), having stated the essential facts in the foregoing Opinion, the following Order in civil contempt shall become effective within ten (10) days, in accordance with Bankruptcy Rule 9020(c), unless an interested party hereto serves and files, with the Clerk of this Court, objections prepared in the manner provided in Bankruptcy Rule 9033(b): the Debtor's counsel is awarded attorneys' fees of $300 as damages as a result of GECC's contempt of our Discharge Order of May 15, 1990.

appears to approach the present value of the furniture.

---

**4.** GECC was not able to explain how this figure was derived and the Contract provides no basis for its calculation. We observe that the figure