**In re James Wallace BURSON, SS# 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, Debtor.**

**James Wallace BURSON, Plaintiff,**

**v.**

**MARINE CORPS FINANCE CENTER, an agency of the United States of America, Respondent.**

**Bankruptcy No. 87-04413-LM7.**

United States Bankruptcy Court,
S.D. California.

Nov. 15, 1989.

J. Edward Switzer, Jr., Switzer & Jenkins, Vista, Cal., for plaintiff.

Robert H. Plaxico, Asst. U.S. Atty., San Diego, Cal., for respondent.

Harold Taxel, La Jolla, Cal., trustee.

MEMORANDUM DECISION

LOUISE DeCARL MALUGEN,
Bankruptcy Judge.

James Wallace Burson, the debtor, filed a complaint against the Marine Corps Finance Center for violation of 11 U.S.C. Section 524(a)(2).[1] Debtor filed a Chapter 7 petition, and was subsequently discharged from his debts. After the Discharge Order was entered, the Marine Corps Finance Center ("MCFC") attempted to collect a reenlistment bonus owed by the debtor for his failure to complete the term for which the bonus was paid. The question before the Court is whether the MCFC held a

---

**1.** Section 524 states:

    (a) A discharge in a case under this title—
      (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ...

pre-petition claim and, if so, whether its efforts to collect upon the debt were in violation of Section 524(a)(2).

Upon review of the points and authorities and exhibits submitted by the parties, and upon review of the applicable case law, the Court finds that the MCFC violated Section 524(a)(2). This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. Section 1334 and Section 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I).

## FACTS

James Wallace Burson served as an aircraft mechanic with the United States Marine Corps for four years. In July 1986, he reenlisted for an additional six years under a procedure called the Selective Reenlistment Bonus Program. The purpose of the program is to retain military service personnel in designated military occupations. Under the program, the debtor received a reenlistment bonus of $15,473.23. Fifty percent or $7,736.62 was paid immediately upon reenlistment, with the balance to be paid annually in five installments of $1547.33 each. As a condition of receiving the bonus, the debtor was required to sign a Statement of Understanding which detailed the terms under which the bonus would be paid and conditions under which the bonus must be repaid.

On June 17, 1987, the debtor filed a Chapter 7 petition. Then in July 1987, the debtor received from the Marine Corps: (1) an official notice of intent to discharge and (2) the second annual bonus installment. In October 1987, debtor was discharged from his debts. Subsequent to the entry of discharge, the debtor was officially discharged from the Marine Corps. After Burson's discharge from the Marine Corps, MCFC attempted to collect from him the unearned portion of the bonus. In response, counsel for debtor filed this Motion for Order of Contempt against MCFC for violation of Section 524(a)(2).

## ISSUE

Whether a reenlistment bonus disbursed to a serviceman is a pre-petition claim held by the Government.

## DISCUSSION

Burson asserts that MCFC held a contingent claim against him for repayment of a reenlistment bonus. In support of this position he states that "Congress intended the broadest possible definition for the term claim so that all of the debtor's legal obligations, no matter how remote or contingent, can be dealt with in the bankruptcy case." (Plaintiff's Memorandum of Points and Authorities, pp. 4–5, 11. 26–28; 1–2) Debtor cites to 11 U.S.C. Section 101(4)(A) which defines the term "claim" and case law interpreting that section in support of this argument. Applying this broad interpretation to the present dispute, debtor argues that upon receipt of the first payment, there was an obligation to repay any unearned portion of the bonus upon the failure to complete the six year enlistment. Although the failure to complete the enlistment was remote, MCFC nonetheless held a contingent prepetition claim.

MCFC asserts that its claim was not subject to the Discharge Order since the debtor's repayment obligation matured post-petition. In support of its position, MCFC claims that it did not have a right to repayment at the time the debtor filed for bankruptcy because unless the debtor was separated from service, he was entitled to keep the enlistment bonus. As evidence of this assertion, MCFC points to the fact that the debtor received a payment one month after the Chapter 7 petition was filed. Because separation occurred subsequent to the filing of the petition, MCFC asserts that its claim arose post-petition.

To determine whether MCFC violated Section 524(a)(2), the Court must determine whether MCFC's claim arose pre-petition. The Code defines a "claim" as a ...:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; 11 U.S.C. Section 101(4).

As originally drafted, it was Congress' intent to give the definition of "claim" an interpretation broader than that contained in the Bankruptcy Act. This intent is reflected in the legislative history which states:

> The definition in paragraph (4) adopts an even broader definition of claim than is found in the present debtor rehabilitation chapters. The definition is any right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ... By this broadest possible definition and by the use of the term throughout the title 11, especially in subchapter I of chapter 5, the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.[2]

Although the term "claim" is given an expansive definition under the Code, "such definition may not confer the status of claimant upon a petitioning creditor who has no right to payment." *In re First Energy Leasing Corp.*, 38 B.R. 577, 581 (Bankr.E.D.N.Y.1984). Thus, prior to determining whether MCFC held a pre-petition claim, the Court must determine the threshold issue of whether MCFC had a right to payment at the time the debtor filed for relief.

In his Memorandum of Points and Authorities, debtor asserts that the contingent nature of his obligation is no different than the contingent nature of a guaranty or surety agreement. (p. 8, 11. 13–15). Stated another way, debtor analogizes the enlistment agreement to a guaranty or surety agreement, where, upon the signing of the agreement, there exists a right to payment by one party who undertakes the indemnification of another party in the event of a certain occurrence.

Case law concerning surety relationships confirms the proposition that a right to payment exists as of the signing of the agreement, but is dependent on the occurrence of a future event. See *In re THC Financial Corp.*, 686 F.2d 799, 802–04 (9th Cir.1982); *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. (Unit A) 1981) (*per curiam*).

Although the Statement of Understanding signed by the debtor is not the equivalent[3] of a surety agreement, there is one shared attribute: Upon the signing of the agreement, a right to payment exists in the event of a certain occurrence. Marine Corps Order 7220.24L ("Order") sets out both the eligibility for and termination of entitlement requirements for the Selective Reenlistment Bonus Program ("SRB Program"). Paragraph 13 of the Order is entitled "Recoupment". Subparagraph (a) of paragraph 13 states that:

> [a] Marine who voluntarily or because of misconduct does not complete the term of reenlistment for which the bonus was paid ... shall refund that percentage of the bonus that represents the unexpired part of the additional obligated service for which the bonus was paid.

The Court construes this language to mean that the MCFC holds a right to payment from a Marine who enrolls in the SRB

---

2. H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), reprinted in 1978 U.S.CODE CONG. & ADMIN.NEWS 5963, 6266; S.Rep. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S. CODE CONG. & ADMIN.NEWS 5787, 5808.

3. The distinction between a surety or guaranty contract and the Statement of Understanding is an unimportant one for the purposes of this

case. When an individual undertakes the responsibility of a surety or guarantor, he or she is bound for the default in payment by another person. In the present dispute, there was no surety or guarantor, only an agreement by Burson that he would be liable for repayment if he failed to complete the term for which the bonus was paid.

Program, contingent upon the Marine failing to complete the term for which the bonus was paid. In light of this interpretation, the Court finds that a right to payment existed for MCFC on the date the debtor filed for relief.

Having determined that MCFC held a right to payment, the Court can now decide whether MCFC held a pre-petition claim. Of the adjectives used in Section 101(4) to define the term "claim," the adjective most applicable to the present dispute is the term "contingent". Although not defined in the Code, an often cited definition of contingent is that "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event." *In re All Media Properties, Inc., Id.* at 133, *See also In re Dill,* 30 B.R. 546 (9th Cir. BAP 1983). Applying this definition to the present dispute, the facts which gave rise to Mr. Burson's liability were not in existence at the time of the filing of the petition, but were contingent upon Burson failing to complete the term for which the bonus was paid. Accordingly, the Court finds that MCFC held a pre-petition contingent claim.

The Court is not persuaded by *Matter of Kelly,* 88 B.R. 477 (Bankr.M.D.Ga.1988), cited by counsel for MCFC in support of its position that it did not violate Section 524(a)(2). In *Kelly,* an Air Force serviceman received a reenlistment bonus and then, one-and-a-half years later filed his Chapter 7 petition for relief. The government attempted, post-petition, to collect from the debtor the unearned portion of the bonus. The question presented before the court was whether the government's collection efforts were in violation of the automatic stay of Section 362.

Finding that the government did not violate the stay, the court held that the debt to the government was incurred post-petition and not subject to discharge. In support of its holding, the court made reference to the fact that the debtor did not receive official notification of his discharge, nor was he actually discharged until after the Chapter 7 petition was filed. *Id* at 479. Although the facts of *Kelly* and the present dispute are identical, the *Kelly* opinion fails to discuss the crucial issue of whether the debt in question was a contingent claim at the time the petition was filed. As a result, the Court is not convinced by the reasoning set forth by *Kelly* and, therefore, declines to follow its holding.[4]

The Court finds that MCFC held a pre-petition claim which was discharged upon entry of the Order of Discharge. The Court further finds that MCFC's attempt to collect the debt after entry of the Discharge Order is in violation of 11 U.S.C. Section 524(a)(2).

Accordingly, Mr. Burson shall recover reasonable attorneys fees incurred in the defense of this action. Counsel for debtor is directed to prepare an Order in conformance with this Memorandum Decision and to submit a declaration concerning the fees incurred within ten (10) days from its entry herein. Counsel for MCFC has five (5) days to lodge an objection.

---

4. The Court also declines to follow MCFC's argument that the debtor's repayment obligation does not constitute a debt or a claim, and thus, is not subject to the Bankruptcy Code. MCFC refers the Court to *In re Newman,* 35 B.R. 97 (W.D.N.Y.1983) and *In re Villarie,* 648 F.2d 810 (2d Cir.1981). These two cases are factually distinguishable from the present dispute in that they did not involve reenlistment bonuses. Further, the respective creditors in each case did not hold a right to payment ("[N]o requirement ... that Mr. Newman pay the severance back," *Newman, Id.* at 98; "... [no] right to sue a member for the amount of the advance." *Villarie, supra,* at 812). In present case, the Court has determined that MCFC held a right to payment, and thus, a pre-petition claim.