**In re Keith FARLEY, Debtor.**

**Keith FARLEY, Plaintiff,**

v.

**BOYNTON BROTHERS & CO. and
Edward Sparkman, Esquire
Trustee, Defendants.**

Bankruptcy No. 91–12690S.

Adv. No. 91–1049S.

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 24, 1992.

_____

Thomas J. Turner, III, Philadelphia, Pa.,
for debtor.

Rodger L. Mutzel, Media, Pa., for defendant Boynton Brothers & Co.

Edward Sparkman, Philadelphia, Pa., defendant trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding presents a simply-stated but novel question regarding the dischargeability of certain claims, which depends upon whether they are classified as pre-petition or post-petition claims. The specific question raised in this matter is whether the Debtor's liability to pay certain shares of commissions which accrue to his benefit under a pre-petition contract is a post-petition obligation which the Debtor may discharge in his instant Chapter 13 bankruptcy. We hold that the obligation in question is a post-petition claim, and we therefore decide this issue against the Debtor.

### B. FACTUAL AND PROCEDURAL HISTORY

KEITH G. FARLEY ("the Debtor") filed the voluntary individual Chapter 13 bankruptcy case out of which this proceeding arose on May 14, 1991. Pervading this case is the Debtor's relationship with Defendant BOYNTON BROTHERS & CO. ("the Defendant"), which arises out of a written Agreement of May 1, 1989 ("the Agreement"). In the Agreement, the Defendant sold to the Debtor a property and casualty insurance account relating to a client of the Defendant, United Technologies, Inc. ("UTI"). Pursuant to the Agreement, the Debtor was to replace the Defendant as the broker of record on this account, but was obliged to remit forty (40%) percent of his commissions earned from UTI in the following three years to the Defendant.

On June 5, 1991, the Defendant filed a motion seeking relief from the automatic stay to permit it to continue with a proceeding to garnish $2,800 of commissions collected by the Debtor from UTI. The Defendant in the garnishment proceeding was

McGriff, Seibels, and Williams ("McGriff"), a firm located in South Birmingham, Alabama, which was acting on behalf of the Debtor. The garnishment was effected in execution upon a judgment of a Pennsylvania state court in favor of the Defendant in the amount of $40,164.65. This judgment was based upon the Debtor's failure to remit the forty (40%) percent of the commission due to the Defendant under the Agreement. On his part, the Debtor, on June 28, 1991, filed a motion to hold the Defendant and its various attorneys liable under 11 U.S.C. § 362(h) for refusing to "lift" the garnishment execution against McGriff after the Debtor's bankruptcy filing. Both of these motions were listed for hearings on August 13, 1991, at which time the parties reported that a settlement had been reached.

On November 14, 1991, this court approved a Stipulation to effect that settlement, which had been filed that date ("the Stipulation"). Pursuant to the terms of the Stipulation, the Debtor withdrew his § 362(h) motion; the $2,800 held by McGriff was released to the Defendant; sixty (60%) percent of any other funds held by McGriff or earned thereafter were to be released to the Debtor; and the remaining forty (40%) percent of future funds received by McGriff were to be held by McGriff pending a determination of the parties' rights thereto in a later proceeding. The instant proceeding is that later proceeding.

The confirmation hearing in the Debtor's bankruptcy case was initially scheduled on November 21, 1991. On October 10, 1991, the Defendant filed an Objection to confirmation based upon the Debtor's alleged failure to contribute all of his disposable income to his plan, in violation of 11 U.S.C. § 1325(b)(1)(B), and his alleged lack of good faith in filing this case in the wake of dismissal of two prior cases. The confirmation hearing was ultimately continued to January 16, 1992, the date of the trial of the Complaint.

The Complaint recited two claims. Firstly, it noted that the Defendant had filed two proofs of claim against the Debtor on

August 29, 1991: (1) No. 4, based upon the Defendant's judgment of $40,164.65, for its share of past commissions ("Claim 4"); and (2) No. 5, "in excess of $50,000," based upon all of the Defendant's claims under the Agreement which were not covered by the judgment ("Claim 5"). The Debtor sought a declaration that Claim 5 was a non-priority, unsecured, pre-petition claim, dischargeable in this bankruptcy case. Secondly, the Debtor sought to avoid the Defendant's judicial lien effected by its garnishment against McGriff, pursuant to 11 U.S.C. § 522(f)(1).

On January 16, 1992, the parties agreed to present the proceeding to this court on a number of factual stipulations recited in open court. Most of the stipulated facts have been already worked into this Opinion. Added was a stipulation that the fees arising out of the Agreement, which totalled about $4,000 monthly, were the Debtor's primary source of income necessary to fund the plan. After a colloquy with opposing counsel and the court, the Defendant's counsel conceded that the lien arising out of the Defendant's garnishment in execution of its judgment was indeed avoidable under § 11 U.S.C. § 522(f)(1). Therefore, that issue is not discussed further herein.

The Defendant also conceded that the commissions accruing to its benefit under the Agreement prior to May 14, 1991, the date of the Debtor's bankruptcy filing, were indeed pre-petition claims which would, in all probability, be dischargeable in this case. However, the Defendant vigorously resisted the notion that obligations accruing to it under the Agreement between May 14, 1991, and May 1, 1992, could possibly be dischargeable.

On his part, the Debtor's counsel argued that the Debtor's obligation to pay to the Defendant forty (40%) percent of his UTI commissions accruing on and after May 14, 1991, were pre-petition claims, because they were based on the pre-petition Agreement of May 1, 1989. It was argued that the Agreement was like an installment sales contract, the total obligation on which accrues pre-petition even though, as per the Agreement, post-petition payments

were due to be made to the creditor on account.

## C. CONCLUSIONS OF LAW/DISCUSSION

At the outset, we note a potential impediment to our granting the relief of a declaration of dischargeability sought by the Debtor at this stage. It was stated, in *In re Johnson–Allen*, 871 F.2d 421, 423, 428 (3d Cir.1989), *aff'd sub nom. Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), that the issue of dischargeability of specific obligations in Chapter 13 cases may not be "ripe" for determination until the Debtor "has completed the Chapter 13 plan," and is prepared to receive a discharge order. The confirmation hearing in this case has not yet been conducted. Therefore, the entry of a discharge order, which will occur only when all payments under a confirmed plan are completed, could be quite far off. Consequently, we are possibly faced with the prospect that this proceeding, seeking a determination of rights as to dischargeability of a certain obligation in a Chapter 13 case at this time, must be dismissed as premature.

Assuming *arguendo* that this "ripeness" issue is overcome, we nevertheless conclude that the Debtor is not entitled to the relief sought, because we find that the Debtor's disputed obligations to the Defendant are post-petition obligations, not pre-petition obligations. In *In re McNeil*, 128 B.R. 603, 610–13 (Bankr.E.D.Pa.1991), we discussed several of the issues pertinent to resolution of this proceeding, in the context of Debtors' seeking contempt remedies against a creditor who allegedly violated their discharge injunction. Therein, we expressed concordance with the assertion of the Debtor that all of the periodic payments due under a pre-petition retail installment contract, even those payments falling due post-petition, were portions of a totally pre-petition debt. *Id.* at 611.

In *McNeil*, we based this conclusion, in part, on the controlling holding in *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir. 1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), that the determination of whether a debt is pre-petition or post-petition is controlled by when the creditor's "right to payment" arises. 128 B.R. at 610. In the context of an installment sales contract, which inevitably contains an acceleration clause, the right of the creditor to payment of the entire contract balance arises upon default. *See id.* at 611. However, under the instant Agreement, the Debtor's obligation to pay to the Defendant forty (40%) percent of the commissions earned by him from UTI does not arise until the Debtor earns the commissions himself.

A case which might appear, at first blush, to support the Defendant's position is *In re Burson*, 107 B.R. 285 (Bankr. S.D.Cal.1989), cited in *McNeil, supra*, 128 B.R. at 611. The *Burson* court held that the Debtor's obligation to repay a Marine Corps re-enlistment bonus received by him pre-petition, which arose as a result of his post-petition discharge from the Corps, was a pre-petition indebtedness which was dischargeable in his Chapter 7 bankruptcy case. *Contra In re Kelly*, 88 B.R. 477 (Bankr.M.D.Ga.1988) (court holds to the contrary on virtually identical facts arising out of an Air Force re-enlistment bonus). However, one notable factual distinction between the facts of *Burson* and those of the instant case is that the *Burson* debtor had pre-petition possession of the funds which he became liable to repay, albeit as the result of post-petition events. By definition, the Debtor here, or McGriff on his behalf, will not receive possession of the commissions payable to the Debtor post-petition until after the filing of his bankruptcy petition.

A final group of cases which deserves some consideration includes those cases addressing the dischargeability of post-petition condominium fees, many of which are collected and discussed in *McNeil*, 128 B.R. at 612–13. One line of these cases holds that fees owed to a condominium association by a debtor-condominium owner which fall due post-petition are dischargeable in Chapter 7 cases when the debtor has relinquished, or intends to relinquish, his condominium unit. *See, e.g., In re Miller*, 125 B.R. 441, 442–43 (Bankr.W.D.Pa.1991); and *In re Ryan*, 100 B.R. 411, 413 (Bankr. N.D.Ill.1989). *Contra, e.g., In re Horton*, 87 B.R. 650, 652 (Bankr.D.Colo.1987) (since

the creditor's right to payment of post-petition condominium fees arises post-petition, the owner's obligation to pay such fees are not dischargeable). In *McNeil*, we readily distinguished the periodic obligations of condominium owners from the obligations of the *McNeil* debtor under an installment contract, all of which fell due pre-petition. 128 B.R. at 612.

The instant disputed obligations of the Debtor to the Defendant clearly have and will fall due post-petition. However, unlike the Debtors in such cases as *Miller* and *Ryan*, who were prepared to relinquish their condominium units, the Debtor clearly intends to receive and retain the commissions due to him under the Agreement to fund his Plan. Nevertheless, the Debtor desires to avoid his liability under that same Agreement to pay a portion of the commissions to the Defendant. None of the condominium fee cases have gone so far as the Debtor wishes us to go—holding that he may retain the post-petition benefits of the Agreement without fulfilling his burdens under it.[1] The result sought by the Debtor would be comparable to the unlikely conclusion that a condominium owner-debtor's obligation to pay post-petition fees is dischargeable even if that Debtor retains the condominium unit.

We therefore can find no basis on which to conclude that the Debtor's obligation to the Defendant is dischargeable. We are hence obliged to rule against the Debtor on the lone outstanding issue in the proceeding.

We never did address the issues of confirmability of the Debtor's plan apart from the issues presented in this proceeding at the hearing and trial of January 16, 1992. We will accord the Debtor a brief opportunity, until January 31, 1992, to amend his plan in light of this decision and to attempt to achieve confirmation of it. We will also schedule the Debtor's main case for a final confirmation hearing on February 13, 1992. If the Debtor's Plan cannot be confirmed on that date, his bankruptcy case may be dismissed.

## D. CONCLUSION

An Order consistent with these conclusions will be entered.

### ORDER

AND NOW, this 24th day of January, 1992, upon receipt of an oral stipulation of facts of the parties' counsel in lieu of a testimonial record at the trial of this proceeding and a second continued Confirmation hearing on January 16, 1992, and upon careful consideration of the arguments of the parties' counsel and the pertinent authorities, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff–Debtor, KEITH FARLEY, and against the Defendant, BOYNTON BROTHERS & CO. ("the Defendant"), in part only.

2. The judicial lien obtained against the Debtor's exempt property by the Defendant's garnishment of funds in the hands of McGriff, Seibels, and Williams, Inc. is hereby AVOIDED.

3. The Debtor's request that we declare dischargeable that aspect of the Defendant's Claim No. 5 relating to the Debtor's obligation to remit to the Defendant forty (40%) percent of post-petition funds received under his Agreement of May 1, 1989, with the Defendant is DENIED.

4. The Debtor shall file and serve upon counsel for the Defendant, the co-defendant EDWARD SPARKMAN, ESQUIRE, TRUSTEE, and the court in chambers any

---

1. This language is reminiscent of that which often appears in cases considering motions to reject executory contracts, *e.g., In re Metro Transportation Co.,* 87 B.R. 338, 341 (Bankr. E.D.Pa.1988), *i.e.,* a Debtor cannot reap the benefits of an executory contract while failing to fulfill the burdens of 11 U.S.C. § 365(b). The Defendant raised the issue of whether the Agreement is, in fact, an executory contract. The relationship between UTI and the Debtor is, arguably, an executory contract. However, it is difficult to envision what additional obligations the Defendant must perform under the Agreement at this point. Therefore, the Agreement, as between the Debtor and the Defendant, does not appear to be an executory contract. *See Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 39 (3d Cir.1989). The Defendant's counsel ultimately withdrew the executory-contract issue, apparently foreseeing that this issue was not significant to the matter in contest.

Amended Plan which he deems is necessary and appropriate in light of, *inter alia,* this decision and the Objections to confirmation filed by the Defendant, on or before January 31, 1992.

5. A final confirmation hearing is scheduled on THURSDAY, FEBRUARY 13, 1992, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

6. If the Debtor's Plan or Amended Plan filed pursuant to paragraph 4 *infra* cannot be confirmed on February 13, 1992, this case may be dismissed.