In re Arthur Gary BRYER a/k/a A. Gary Bryer a/k/a Gary Bryer, Kimberley Anne Bryer a/k/a Kimberley Anne Hetrick a/k/a K.A. Hetrick a/k/a K.A. Bryer, Debtors.

A. Gary BRYER, Kimberley Anne Bryer, Plaintiffs,

v.

Barton M. HETRICK, Sr. and Edward Sparkman, Chapter 13 Standing Trustee, Defendants.

Bankruptcy No. 97–14255DAS.
Adversary No. 97–1012DAS.

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 8, 1998.

Arthur Gary Bryer, Kimberley Anne Bryer, Wayne, PA, pro se.

Eugene Joseph Malady, Media, PA, for Barton M. Hetrick, Sr.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Chief Judge.

### A. INTRODUCTION

The instant proceeding ("the Proceeding") is the latest in a series of disputes, and hopefully the final bankruptcy-related matter in this series, between co-debtor KIMBERLEY A. BRYER ("the Wife") and the Wife's former husband, Defendant BARTON M. HETRICK, SR. ("the Defendant"). The Proceeding, of which Co–Debtor ARTHUR GARY BRYER ("the Husband;" with the Wife, "the Debtors"), a former bankruptcy paralegal, is the draftsperson, is based upon a three-count complaint embellished with numerous exhibits, which principally seeks to determine the dischargeability, in light of the Wife's discharge in a prior Chapter 7 case, of support-credit arrearages that became due to the Defendant pursuant to an agreement and order made on January 23, 1996 ("the Agreement"), before the Honorable Joseph Battle in the Court of Common Pleas of Delaware County, Domestic Relations Division ("the CCP"), and which were fixed at $5,427.21 in a June 27, 1997, order of the CCP.

We hold that the Defendant's claim against the Wife was not an obligation discharged in the Wife's prior Chapter 7 case for three separate reasons: (1) the obligation does not represent a dischargeable post-petition claim; (2) the Agreement was a voluntary agreement to repay, rather than a coercive reaffirmation; and (3) we are bound by the unappealed CCP order allowing the credit to be set off. However, pursuant to the parties' agreement that we should also determine whether the Defendant's claim for credit is entitled to priority status under 11 U.S.C. § 507(a)(7) at this juncture, we conclude that

priority status is unwarranted. We make this determination principally due to our conclusion that the Defendant is in no sense a dependant spouse for whom such credits were in any sense reasonably necessary for the support of him and the dependant child in his custody.

### B. PROCEDURAL AND FACTUAL HISTORY

The procedural and factual history of the disputes between the Wife and the Defendant, apparently fueled by the Husband's urges to "play lawyer" for the Wife, is extremely lengthy and complicated. We will emphasize only the bankruptcy-related aspects.

The Wife and the Defendant were married on July 19, 1980. The Wife became involved with the Husband through their children's common membership in a cub scout troop. The Wife and the Defendant separated, and the Defendant ultimately filed a Complaint in Divorce in the CCP against the Wife on January 23, 1992. These parties had two children, Barton, Jr. (B.J.), age 16, who currently lives with the Wife, and Gregory, age 14, who resides with the Defendant.

On May 27, 1993, the Wife filed an individual voluntary Chapter 7 case in this court, at Bankr. No. 93–13177 ("the Chapter 7 Case"). A discharge was duly entered in this case on October 14, 1993. On February 1, 1994, an equitable distribution agreement was entered into by the parties in the CCP, and was incorporated into their divorce decree. Pursuant to this agreement, the Defendant assumed responsibility for all joint marital obligations.

Although this agreement seemingly resolved important disputes between the parties, it did not prevent a subsequent volley of legal actions. In this court, the Wife, on April 22, 1994, filed Adversary No. 94–0310 against the Defendant and his counsel, Eugene J. Malady, Esquire ("Counsel"), charging them with a violation of the automatic stay and the discharge injunction in the Chapter 7 case when Counsel argued before the CCP that the Wife's discharge should be considered in determining the support due to her. We note that some amount of support was concededly due to her because, despite the split custody of the parties' two children, the Defendant's income greatly exceeded hers. We dismissed the complaint in this proceeding in a short decision reported at 1994 WL 326378 (Bankr.E.D.Pa. June 23, 1994), holding that the discharge did not preclude Counsel's raising such arguments.

On April 29, 1994, the parents of the Wife, Patrick and Dale Robinson ("the Robinsons"), brought an action against the Defendant in the CCP, apparently principally to recover monies allegedly contributed by them to the purchase of real property owned by the Wife and the Defendant at 236 Willow Avenue, Wayne, Pennsylvania ("the Premises"), in which the Defendant then resided. In an attempt to settle this litigation, the Robinsons and the Defendant entered into a settlement agreement of January 27, 1995, signed, *inter alia*, by the Wife and her counsel at the time, Richard Mitchell, Esquire ("Mitchell"). The parties thereby agreed, *inter alia*, that the Defendant would vacate the Premises and would not be further obligated, financially or otherwise, on the mortgage thereon. The Defendant, who had made all mortgage payments through that date, vacated the Premises by agreement on April 7, 1995, and the Debtors moved in.

However, the Debtors did not, as the other parties to that agreement apparently contemplated, assume the mortgage payments, making only one such payment. The Wife, in her testimony at the trial of the Proceeding on November 13, 1997, attributes their failure to make these payments to her dissatisfaction with the Premises as a homestead and her belief that she was not obligated to make payments due to her chapter 7 Case discharge, even though she was a signatory to the January 27, 1995, agreement. Concerned that a failure of any party to make payments would adversely affect his credit rating, the Defendant resumed the mortgage payments, and thereafter filed a lawsuit against the Robinsons to, *inter alia*, resolve this dispute. The Defendant continued to make these payments to the mortgagee for several months after April 1995, even though the Debtors then occupied the residence.

On January 23, 1996, a hearing was held before Judge Battle, pursuant to an appeal from a master's recommendation regarding an increase in child support requested by the Wife. During the hearing, the Agreement at issue was reached. The principal pertinent features of the Agreement were that, although the Wife would receive an increase in support from $300 to $395 monthly, she would continue to receive only the current payments of $300 monthly, with the $95 balance to be applied as a credit to the Defendant for the payments he previously made by him upon the mortgage on the Premises.

At the trial of the Proceeding before us, the Wife testified that she was coerced into making this agreement by Mitchell, but did not actually mean to agree to same. The CCP transcript of the colloquy at which the Agreement was reached and recited reflects that, although both Debtors were present, neither voiced any objections thereto. No dissatisfaction of Mitchell's representation was expressed to the Defendant even as of a year later, when, on January 20, 1997, Mitchell sent a letter to Counsel indicating that the Wife would thereafter be representing herself, undoubtedly with the Husband's contemplated assistance.

On March 20, 1997, the Wife filed a petition to again increase the Defendant's child support payments to her. The Defendant responded with his own petition to remit arrears. Before a hearing could be held in the CCP on these matters, the Debtors, on April 8, 1997, filed the instant joint Chapter 13 bankruptcy case.

On May 14, 1997, the Defendant filed a motion in this court seeking relief from the automatic stay to assert all of his defenses and his petition to remit arrears in response to the Wife's petition in the CCP. At the hearing on this motion on June 5, 1997, the Debtors (in the person of the Husband), articulated most of the arguments set forth in more detail in the Proceeding, *i.e.*, that the Defendant should be barred from asserting his credits for the mortgage payments in the CCP because the claims underlying the credits were discharged in the Chapter 7 Case.

However, this court issued an Order/Memorandum of June 6, 1997, granting the Defendant relief to proceed with his petition to remit arrears and to offer any defenses to the Wife's petition to increase her support. This decision noted that the issue of whether a non-debtor may effect a setoff against a debtor's prior obligation was within the jurisdictional power of the CCP, concurrently with this court, to decide, citing *In re Ford*, 188 B.R. 523, 526–27 (Bankr. E.D.Pa.1995), *aff'd*, C.A. No. 95–7810 (E.D.Pa. Oct. 2, 1996), *aff'd*, 116 F.3d 467 (3d Cir.1997). The order noted that the issue of setoff was "intertwined" with the support issue which was solely within the CCP's province. However, we note with some regret, the order further stated that it did not foreclose a plenary determination of the dischargeability of any purported obligation of the Wife to the Defendant in this court if this issue was "distinctly" presented to us. This statement appears to have been the genesis of the Proceeding.

Subsequently a master's hearing was held in the CCP on all of the support-related issues on June 27, 1997. At that hearing the parties agreed to an increase in child support to the Wife to $424 per month, applied retroactively to January 1, 1997. An order of the CCP reflecting that agreement, which has not been appealed, further states that a "credit of $5,427.21" is allowed to the Defendant on account of the mortgage payments and that the Defendant's wage attachment is to apparently remain at $145 bi-weekly, with the amount due in excess of the support paid to be applied to the credit of $5,427.21.

The Defendant has apparently filed a proof of claim in this amount of $5,427.21, which he classifies as a priority claim pursuant to 11 U.S.C. § 507(a)(7). The confirmation hearing in this case was originally scheduled on September 23, 1997, on which date the Proceeding was filed. Before the court for confirmation is the Debtors' Second Amended Plan of Reorganization ("the Plan"), filed on September 16, 1997. The Plan provides for payments of $95.82 monthly for sixty (60) months, to be distributed to the Trustee's commissions, several holders of modest secured claims, and $2,990.39 to a priority claim of the Internal Revenue Service ("the

IRS"). No distribution to general unsecured creditors is contemplated.

Objections to confirmation of the Plan have been filed by the IRS and by the Defendant. The IRS states that the Debtors did not file their 1996 income tax return, which the Debtors contend in the Plan was in fact done, and that the Plan is not sufficiently funded to pay its priority claim of $6,808.49 based on estimated taxes. The Defendant objects to the Plan's failure to provide for his priority claim and the failure of the Schedules to adequately disclose the Wife's income.

The confirmation hearing was continued to the date of the scheduled trial of the Proceeding, November 13, 1997. In addition to seeking declarations that the Defendant is not entitled to the mortgage credits due to the discharge in the Chapter 7 Case and that his claim be reclassified as a general unsecured claim, the Debtors also seek an affirmative recovery of "the approximate sum of $1,742.26" from the Defendant, apparently representing amounts already, allegedly improperly, credited against the Defendant's support payments. The request for affirmative relief prompted this court to enter an order of November 6, 1997, requiring the joinder of the Standing Chapter 13 Trustee, Edward Sparkman, Esquire ("the Trustee"), as party to the Proceeding. *See* 11 U.S.C. § 323; *Richardson v. United Parcel Service,* 195 B.R. 737 (E.D.Mo.1996); *Krank v. Utica Mutual Ins. Co.,* 109 B.R. 668 (E.D.Pa.), *aff'd,* 908 F.2d 962 (3d Cir.1990); and *Cain v. Hyatt,* 101 B.R. 440, 442 (E.D.Pa.1989). Although the Trustee seemingly should have been joined as a plaintiff, he was added as a defendant in an Amended Complaint filed on November 10, 1997.

After the trial, the parties were accorded until December 15, 1997, and December 29, 1997, to submit, respectively, opening and reply briefs addressing all claims in the Proceeding and, additionally, the proper classification of the Defendant's claim. Both parties filed opening submissions but only the Debtors submitted a reply. The confirmation hearing was continued until January 8, 1998, anticipating that resolution of at least the issue of proper classification of the Defendant's claim must precede confirmation.

On November 21, 1997, the Trustee filed a motion to dismiss the case on the ground that the Plan was infeasible, which is also scheduled for a hearing on January 8, 1998. This decision is consciously filed prior to that date.

## C. DISCUSSION

1. *The Wife's 1993 Chapter 7 Case Discharge Did Not Affect the Defendant's Right to Assert a Claim for Credits on Account of His Post–April, 1995 Mortgage Payments.*

The question of when a claim arises for bankruptcy purposes has been determined, in this Circuit, by the decision in *In re M. Frenville Co.,* 744 F.2d 332 (3d Cir.1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). *Frenville* holds that a claim arises when the obligee has a "right to payment" of same under applicable state law. *Id.* at 336–37. *See In re Farley,* 135 B.R. 493, 495–96 (Bankr.E.D.Pa.1992); and *In re McNeil,* 128 B.R. 603, 610–11 (Bankr.E.D.Pa.1991).

It appears to us that, under applicable Pennsylvania law, a right of payment on a contract claim arises at the time of a breach of a contract which provides the obligee with a cause of action against the obligor. *See Selig v. Philadelphia Title Ins. Co.,* 380 Pa. 264, 272, 111 A.2d 147, 151 (1955); and *Chittenholm v. Giffin,* 357 Pa. 616, 619, 55 A.2d 324, 326 (1947).

The Debtors argue that the Wife's personal obligation on the mortgage was discharged in the Chapter 7 Case and that, because of this, the Defendant's efforts to hold her liable for any post-discharge mortgage payments is an attempt to collect from her a debt due on a pre-petition contractual obligation, citing, *inter alia, McNeil, supra.*

*McNeil* indeed does hold that a debtor's entire personal liability on an installment contract, including payments falling due postpetition, is discharged by a successful Chapter 7 case. 128 B.R. at 611–12. However, as *Farley* explains, 135 B.R. at 495, this holding must properly be taken as confined to the context of a situation involving "an install-

ment contract, which inevitably contains an acceleration clause, [in which case] the right of the creditor to payments of the entire contract balance arises upon default." In *Farley*, we held that the discharge did not affect the rights of an obligee to a pre-petition contract with a debtor to assert its rights to payments under that contract which arose solely from post-petition events. *Id.*

■ This is an easier case than *Farley*. The post-petition obligation at issue here does not even run to the obligee in the pre-petition contract at issue. Despite the fact that the Wife received a previous discharge from all joint marital obligations, including the mortgage on the Premises, the instant obligation is an obligation to a co-obligor arising solely as a result of actions between the co-obligors which occurred post-petition.

It should also be recalled that the lien of the home mortgage against the Wife was not affected by her Chapter 7 Case discharge. *See McNeil, supra,* 128 B.R. at 606–08, 611–12. Thus, if the Wife wanted to retain possession of the Premises, she was obligated to see that the mortgage against it was paid. This state of affairs can be compared to that in the condominium-fee cases cited in *Farley, supra,* 135 B.R. at 495–96; and *McNeil, supra,* 128 B.R. at 612–13, some of which hold that the issue of whether such fees are discharged is determined by whether the debtor retains possession of the condominium unit after the bankruptcy filing.

The Debtors appear to argue in response to this observation that the Wife's possession of the Premises after April 1995 should be discounted because she did not wish to live there. Suffice it to say that she *did* and *does* live there, thereby avoiding the necessity to pay for shelter elsewhere. That the Debtors might prefer to live in some other place were they able to do so financially appears totally beside the point, as many persons would prefer to live in better housing if they were able to do so.

It is therefore clear to us that the Wife's obligation to reimburse the Defendant for his gratuitous 1995 mortgage payments is an obligation having little or no relationship to her discharged pre-petition personal obligation to pay the mortgage on the Premises.

Therefore, the Defendant's right to reimbursement for these payments was not, by any stretch of reasoning, discharged in the Wife's Chapter 7 Case.

■ The Debtors alternatively argue, even more tenuously, that this liability constitutes a reaffirmation of a debt discharged in the Chapter 7 Case which was not approved by this court and is hence unenforceable. As is noted above, in the Agreement, the Wife did not agree to assume her previous obligation to the mortgagee of the Premises. She was merely agreeing to compensate her co-obligor, the Defendant, for making certain of these payments. The Wife's obligation to compensate the Defendant for mortgage payments was thus a post-petition debt, not previously discharged in the Chapter 7 Case. Hence, her agreement to reimburse the Defendant was in no sense an illegal reaffirmation of a previously-discharged debt.

■ However, even if we were to hold that the Wife's obligation to the Defendant were an assumption of a previously-discharged debt, we note that a debtor may, at any time, make voluntary payments to creditors holding discharged debts pursuant to 11 U.S.C. § 524(f). That Code section places no restrictions on a debtor's voluntarily paying off a discharged debt, nor does it provide that any particular procedures must be followed before a debtor may voluntarily pay off such a debt.

The Wife, citing to cases where creditors have lured debtors into agreements to pay discharged debts with promises of future credit-lines, *e.g., Van Meter v. American State Bank,* 89 B.R. 32, 34 (W.D.Ark.1988); *In re Armstead,* Bankr. No. 96–10592DWS (Bankr.E.D.Pa. Nov. 7, 1997); and *In re Bowling,* 116 B.R. 659, 663–64 (Bankr. S.D.Ind.1990), argues that suasion by Mitchell supplied the requisite coercion to overcome her voluntariness in making the Agreement. However, in most circumstances, a client is bound by the actions of his attorney on the client's behalf. *See Pioneer Investment Services Co. v. Brunswick Associates, L.P.,* 507 U.S. 380, 396–97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993). Even if an attorney acts without authority, silence as to

counsel's lack of authority by the client, particularly one so vigorously protected in legal matters as is the Wife by the Husband, for such a long period of time, *e.g.*, greater than one year, constitutes ratification of the attorney's actions on the client's behalf. *See Tiernan v. Devoe*, 923 F.2d 1024, 1037 (3d Cir. 1991). As the Defendant established at trial, the Wife, far from disavowing the Agreement in every sense, invoked its provisions when it served her purposes to do so. In any event, the coercion at issue was not alleged to have been provided by the Defendant, or Counsel, as it was by the creditors in the foregoing cases. They have both been viewed by the Wife at all times as adversaries of the first order whose "advice" she was most unlikely to accept.

In sum, it appears to us that the Wife is unfairly invoking the reaffirmation issue to attempt to retroactively undo a portion of the Agreement into which she freely entered only at the juncture where that Agreement requires certain performances on her part. Thus, even were the Wife's obligations to credit the Defendant for the mortgage payments at issue otherwise dischargeable, we would conclude that the Agreement is not an illegal reaffirmation, but is in fact a voluntary agreement to repay pursuant to § 524(f) which is at this time totally enforceable against her.

Finally, there is a third, independent reason why the Wife cannot extricate herself from her obligation to credit the Defendant for the mortgage payments at issue. That issue is described in *Ford, supra*, cited to the Debtors in our June 6, 1997, order, which is that, although this court has jurisdiction to decide the issue of whether a setoff against a debt arguably discharged can be asserted by a pre-petition claimant, state courts have concurrent jurisdiction with bankruptcy courts to decide such issues. *See also Coo-*

*per–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 94–96 (3d Cir.1984) (federal district court had jurisdiction concurrently with the applicable bankruptcy court to decide post-discharge, setoff-related issues).

In the present situation, after our order granting the Defendant relief from the automatic stay to raise this issue in the CCP, that court entered the order of June 27, 1997, accepting the master's recommendation that the Defendant could set off the $5,427.21 credit against his support obligation to the Wife. The issue of the dischargeability of that obligation in the Wife's Chapter 7 Case was apparently raised by the Wife and given due consideration by the CCP, but was decided against the Wife and not appealed further. In accordance with the principles set forth in *Ford*, of which the Debtors were clearly reminded by us in our June 6, 1997, order, prior to the CCP's order of June 27, 1997, this court must consider itself bound by the determination of the CCP on this issue, as it rightfully exercised its concurrent jurisdiction to decide same. Therefore, the fact remains that the Defendant, as of June 27, 1997, was due the $5,427.21 credit against the Wife.

We could probably accept the Wife's further assertions that the $5,427.21 amount of the claim has been reduced by post-June 27 support payments and credits to the Defendant, as the Debtors suggest. However, as we indicated at the November 13, 1997, trial, we will address only the issue of classification of the Defendant's proof of claim and not its liquidation, since the amount of the Defendant's claim is not an issue before us at this time. In light of our decision at page 762 *infra* classifying the claim as unsecured and the provisions of the Plan providing no payments to unsecured creditors, it appears unlikely that we will ever have to decide that issue.[1]

---

**1.** To the extent that the complaint in this Proceeding can be read as requesting a determination that the Wife's indebtedness to the Defendant will be eliminated by the ultimate discharge in this case, we note that the Third Circuit Court of Appeals, in *In re Johnson–Allen*, 871 F.2d 421, 423 (3d Cir.1989), *aff'd sub nom. Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588

(1990), held that dischargeability issues in Chapter 13 cases are not ripe for determination until the Chapter 13 plan has been concluded and it is known which Chapter 13 discharge provision of 11 U.S.C. § 1328 will apply. *See also In re Shervin*, 112 B.R. 724, 729 (Bankr.E.D.Pa.1990). *But see In re Geiger*, 137 B.R. 586, 591 (Bankr. E.D.Pa.), *rev'd on other grounds*, 143 B.R. 30 (E.D.Pa.1992), *aff'd*, 993 F.2d 224 (3d Cir.1993)

## 2. *The Credit Due to the Defendant Is Not in the Nature of Maintenance or Support, and Is Therefore Not Properly Classifiable as a Priority Claim Under 11 U.S.C. § 507(a)(7).*

The Defendant contends that the credit accorded to him by the CCP orders against his child-support payment liability on account of the payments that he made to the mortgagee of the Premises constitutes a priority claim for child support in the Debtors' instant bankruptcy case. However, this argument lacks merit in that no pertinent factor indicates an obligation of the Wife to the Defendant for support, as is necessary to give rise to a § 507(a)(7) claim.

■ The issue of proper classification of the claim at issue is significant to the issue of confirmation of the Plan and any Chapter 13 plan in this case. The Bankruptcy Code, at 11 U.S.C. § 507, sets forth the exclusive listing of the types of claims which are entitled to priority and in what order. In a Chapter 13 proceeding, if a claim is entitled to priority under § 507, the debtor's plan must provide for the full payment of that claim. 11 U.S.C. § 1322(a)(2). However, if a claim is not entitled to priority status, it can and often will be treated as a general allowed unsecured claim entitled to the same treatment as other such claims. The instant Plan, as is common in plans of low-income individuals, provides for no payments at all to general unsecured claimants.[2]

The provision of 11 U.S.C. § 507 pertinent here is § 507(a)(7), which provides as follows:

(a) The following expenses and claims have priority in the following order:

. . .

Seventh, allowed claims for debts to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouses or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a government unit, or property settlement agreement, but not to the extent that such debt—

(A) is assigned to another entity, voluntarily, by operations of law, or otherwise; or

(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support. . . .

Whether a claim constitutes an obligation in the nature of alimony, maintenance, or support has been addressed in the context of a determination of dischargeability under 11 U.S.C. § 523(a)(5) by the Third Circuit Court of Appeals in *In re Gianakas*, 917 F.2d 759, 762–64 (3d Cir.1990). *See, e.g., In re Borzillo*, 130 B.R. 438, 443–45 (Bankr.E.D.Pa.1991).

■ The parties, both referencing *Gianakas* at length, appear to agree that a § 507(a)(7) determination should be guided by the same factors as a § 523(a)(5) determination. *See In re Chang*, 210 B.R. 578, 581 n. 11 (9th Cir. BAP 1997); and *In re Grady*, 180 B.R. 461, 464 (Bankr.E.D.Va.1995).

*Gianakas* held that a debtor's obligation to pay a second mortgage on the home of a nondebtor dependent spouse was, in the context of the facts of the case, in the nature of support and thus nondischargeable. *Id.* at 764. The court also posited that "the great weight of authority holds that an assumption of mortgage debts by one spouse so that the other could remain in the home is generally an obligation in the nature of support." *Id.*

(a bankruptcy court may determine whether a debt could possibly be dischargeable in a Chapter 13 case prior to the time of discharge). If pressed to decide the issue at this point, we would probably be compelled to conclude that, while the Defendant's right to the credit is not nondischargeable under 11 U.S.C. § 523(a)(5), *see* pages 762–764 *infra,* it has been determined subject to setoff in a CCP order which is binding upon us in the context of the Chapter 13 discharge, just as it is in the context of the Chapter 7 case discharge. *See* page 761 *supra;* and *Ford, supra.*

**2.** Whether such treatment of general unsecured claims is justified is determined by whether any objection to confirmation is asserted by the trustee or an unsecured creditor, pursuant to 11 U.S.C. § 1325(b). No such objections have been asserted to date except possibly in a portion of the objections asserted by the Defendant. *See* page 759 *supra.*

In reaching its decision, the *Gianakas* court examined three principle factors which it believed synthesized as many as fifteen (15) factors referred to by various other courts on the question of determining the controlling intent of the parties to classify such debts. *Id.* at 762, citing *Buccino v. Buccino*, 397 Pa.Super. 241, 254, 580 A.2d 13, 19–20 (1990). The factors referenced in *Gianakas* are (1) the language and substance of the agreement; (2) the parties' relative financial circumstances; and (3) the function served by the obligation. *Id.* at 762, 763.

Considering first the issue of language used by the parties in the Agreement, we note that the Agreement is memorialized only by a transcript of an oral settlement between the parties at the hearing of January 23, 1996, before Judge Battle of the CCP, as well as a contemporaneous order from Judge Battle. The Agreement consisted of an increase in the child support for the Plaintiff, applied retroactively, as well as an offset against such for the payments at issue made by the Defendant on the home mortgage. No mention is made of a support obligation of the Wife to the Defendant. Statements made at the hearing by Counsel indicate that it was the intention of all parties involved to compensate the Defendant for making mortgage payments on a home in which he did not live at the time of the payments.

A desire to compensate the Defendant appears quite equitable under the circumstances, but is in no sense indicative of the credit's being classified as a support obligation. In fact, the substance of the Agreement constituted a net order for support *from* the Defendant *to* the Wife. Since the language utilized by the parties is not indicative of a support obligation *from* the Wife *to* the Defendant, *but see Borzillo, supra,* 130 B.R. at 441, 446 (although the husband-debtor's obligation to pay the mortgage in the parties' jointly-owned home resided in by the wife and all of the parties' children was written as a property distribution obligation rather than a support obligation, it was nevertheless determined to be, in effect, a provision for support), the Defendant can prevail only if he can demonstrate that the other two *Gianakas* factors are indicative that the obligation is properly classifiable as support.

The second *Gianakas* factor requires an analysis of the relative financial circumstances of the parties at the time of the Agreement. At the January 23, 1996, hearing it was stipulated that the Defendant earned approximately $81,000 a year and the Wife had the capacity to earn about $28,000 per year, although in fact her annual income was about $7,000. Each party had custody of one teenaged child. Although the Wife had remarried prior to the Agreement, the Husband's income, even when added to hers (and not considering his own dependents), reflected a disparity of income in favor of the Defendant.

The fact that the Defendant's support obligation to the Wife was, in net effect, increased at the hearing contradicts the Defendant's contention that his credit was in the nature of support. In fact, it was deducted from support otherwise payable from him to the Wife. Therefore, the financial circumstances of the respective parties did not and still do not, in light of the further increase in actual support to the Debtor on June 27, 1997, indicate any net support obligation of the Wife to the Defendant.

The final gauge of the parties' intent is the function served by the obligation at the time of the Agreement. An obligation that assists or maintains daily necessities such as lodging for a former spouse and dependant child have typically been held to indicate a support obligation. *See Gianakas, supra,* 917 F.2d at 763–64; and *Borzillo, supra,* 130 B.R. at 446–48. Although we appreciate the fact that the Defendant has custody of one of the parties' two children, nothing presented by the parties demonstrates that the Defendant needed the mortgage payments or the credits to obtain shelter for himself or his son living with him. Insofar as the Premises itself is concerned, the Defendant was quite willing to move out, allegedly into a more comfortable home owned by a new romantic interest on his part. The Defendant has not even claimed that the credit in any way assists him in maintaining shelter or any other necessities, and this court would be hard pressed to see how it could.

In his post-trial submission, the Defendant points only to the earning capacity of the Wife and the Husband, de-emphasizing that it is less than his actual income, and the function of the credit as a trade-off for the increase in support to the Wife as satisfying the *Gianakas* factors. To put it mildly, these are weak arguments.

Therefore, we rather easily conclude that the Defendant's claim for a credit against the Wife cannot be found to be in the nature of support or intended to be so, as to justify ifs classification as entitled to a priority under 11 U.S.C. § 507(a)(7). We will therefore declare that the Defendant's claim is properly classified as an allowed general unsecured claim against the Debtors and will be treated accordingly in assessing the confirmability of the Plan or any amendments thereto.

## D. CONCLUSION

An order consistent with this Opinion, rendering judgment in the Proceeding in favor of the Defendant in regard to the dischargeability of his claim, but in favor of the Debtors in deciding the claim's proper classification as a general unsecured claim instead of a priority claim will therefore be entered.

### ORDER

AND NOW, this 8th day of January, 1998, after a trial of the above-captioned proceeding ("the Proceeding") on November 13, 1997, which the parties agreed could also serve as the record for determining the proper classification of the proof of claim of Defendant BARTON M. HETRICK, SR. ("the Defendant") in the instant main bankruptcy case, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in the Proceeding in favor of the Defendant and against the Plaintiffs as to the dischargeability of the Defendant's debt to the Wife–Debtor.

2. It is DECLARED that the Defendant's claim against the Wife–Debtor was not discharged by her discharge in Bankr. No. 93–13177.

3. However, judgment is entered in favor of the Debtors and against the Defendant as to the proper classification of his proof of claim.

4. It is therefore further DECLARED that the claim of the Defendant in this bankruptcy case is property classified as a general unsecured claim and not as a priority claim pursuant to 11 U.S.C. § 507(a)(7).